652 P.2d 1031

**STATE of Arizona, Appellee,**

v.

**Jesse G. CHRISTOPHER, aka Marco Gonzales, aka Mark Antonio Gonzales, Appellant.**

No. 5481.

Supreme Court of Arizona, In Banc.

Sept. 27, 1982.

Rehearing Denied Nov. 2, 1982.

Robert K. Corbin, Atty. Gen., Bruce M. Ferg, Asst. Atty. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender, Frank P. Leto, Asst. Public Defender, Tucson, for appellant.

GORDON, Vice Chief Justice:

Jesse G. Christopher is the appellant in two cases consolidated for appeal. In the first case, appellant was placed on probation for child molestation, but his probation was revoked when he violated the conditions thereof by committing more child molestations and by having contact with children under the age of 15 years old. The second case concerns appellant's pleas of guilty to six charges of child molestation with two prior convictions. These six charges arose from incidents occurring after the granting of probation. The trial court sentenced appellant to a prison term of 25 years to life for the old code offense in the first case (former A.R.S. § 13–653) to be served concurrently with the 25 year terms subsequently imposed for the new code offenses in the second case (current A.R.S. § 13–1410). We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. § 13–4031, and we affirm.

Appellant was first convicted of child molestation and placed on probation in March, 1979. A presentence report by Dr. John LaWall following a psychiatric evaluation of appellant made recommendations concerning the treatment of appellant. Dr. LaWall stated that any psychiatric treatment should emphasize "behavior modification techniques" rather than "insight therapy." He noted, however, that appellant's motivation to change and remorse for what he had done was questionable. Dr. LaWall concluded that behavior modification would be the most effective treatment plan but that the more drastic alternative of "chemical castration"—a reversible process involving injecting an individual with a chemical that temporarily suppresses the sex drive—could also be used.

The trial court imposed as conditions of probation two years of confinement in the county jail (with eligibility for work furlough) and psychiatric therapy to be paid for by appellant. For reasons not appearing in the record, the treating doctor used the insight therapy method on appellant rather than the behavior modification techniques or chemical castration recommended by Dr. LaWall. The treatment was not successful, and appellant molested more children during the summer of 1981. These molestations led to new criminal charges and revocation of the probation.

Appellant makes only one argument on appeal. He asserts that being placed on probation constitutionally entitled him to be effectively treated and rehabilitated. The state allegedly denied him his right when it did not require his treatment while on probation to include chemical castration and behavior modification. The state's failure to afford effective treatment and rehabilitation, he contends, precludes the state un-

der the Eighth and Fourteenth Amendments to the United States Constitution from giving him such long prison sentences for the offense underlying the probation and the subsequent offenses resulting from that failure.

Appellant argues that a constitutional right to treatment and rehabilitation for a probationer arises as a matter of due process from the purposes of probation and from the state's power to deal with probationers. We find no such constitutional right arising from either source.

To support the contention that rehabilitation is the primary goal of probation, appellant cites the American Bar Association's [ABA's] *Standards for Criminal Justice.* The current views of the ABA, however, directly contradict appellant's argument. In the comments to Standard 18–2.3, the ABA states:

"[T]hese standards endorse probation not because it is believed that probation will rehabilitate the offender, but because no more severe sanction will frequently be necessary. What is essential is that probation is the most humane alternative, not that it might be the most therapeutic. The ABA has long believed that probation is a desirable disposition in appropriate cases for a variety of independent reasons: (1) it maximizes the liberty of the individual while vindicating the authority of the court; (2) it eases the reintegration of the offender into the community; (3) it minimizes the hidden costs that imprisonment places on the family of the offender * * *; and (4) it is the most economic form of correctional supervision.

"Some evidence also exists that the subsequent rate of imprisonment is lower for probationers than for those sentenced to imprisonment. Although a debate exists, many criminologists believe that prison itself may be criminogenic, that is, that longer confinement makes the offender more likely to become a recidivist."

ABA *Standards for Criminal Justice* 18.75–76 (2d ed. 1980).

We do not completely agree with the ABA, as rehabilitation is an important goal of probation in Arizona. *See State v. Montgomery,* 115 Ariz. 583, 566 P.2d 1329 (1977); *State v. Hennessy,* 13 Ariz.App. 546, 479 P.2d 194 (1971). But we recognize that the purposes enumerated by the ABA are also important reasons for granting probation to those convicted in Arizona courts. An additional reason for granting probation rather than imposing a prison term is to alleviate the overcrowding in our prisons by not incarcerating those people with whom the state can adequately deal in other ways. Thus, rehabilitation is not the only nor the primary purpose of granting probation.

■ Although rehabilitation is one goal when penalties are imposed for criminal offenses, there are other goals—retribution, restraint of the offender to prevent him or her from engaging in more criminal acts, and deterrence of the general population from engaging in crime. These goals are as much a consideration when deciding whether and how to impose probation as they are in deciding whether and how to impose a prison sentence.

■ Certainly, any society considered civilized by Western standards stresses rehabilitation in its penological system. This is so as a matter of altruism (society should help those people who commit crimes to help themselves to improve their condition and become law-abiding citizens) and pragmatism (rehabilitated criminals will not continue to prey on society by committing more crimes and will cease being economic burdens on the community). But at this stage of human and scientific development, no society should be forced to guarantee effective rehabilitation to all offenders and ignore the other purposes of punishment. To preserve order and prevent vigilante justice, society needs to consider retribution in its disposition of convicted criminals. Also, it cannot yet be guaranteed that rehabilitation will be successful even if the convicted criminal fully participates in a treatment program. To insure the security of its citizens, society must be able to restrain the criminal to prevent further criminal acts

and to discourage others from committing criminal acts. Proper punishment and treatment can be imposed only if rehabilitation is balanced and considered along with the other goals of punishment—retribution, restraint, and deterrence.

Appellant's case is a good example of why effective rehabilitation cannot become the primary goal of our penological system. After committing one child molestation, appellant was granted probation and given the chance to rehabilitate himself. But the attempted rehabilitation failed and appellant molested more children. Although one psychiatrist recommended a different form of treatment at the time probation was granted, he questioned whether appellant could be effectively rehabilitated by any treatment method because of appellant's lack of remorse and motivation to change. Society is not required to stay the imposition of retribution for the crimes appellant has already committed and forego restraint of appellant thereby allowing him to victimize more children while other rehabilitative treatments are tried. The trial judge and not the prosecutor, defense attorney, defendant, psychiatrist, or probation officer is in the best position to balance the goals of our criminal justice system and to choose the proper disposition, and that judge is not constitutionally required to give the most weight to the goal of rehabilitation.

■ The powers the state may exercise in attempting to rehabilitate a probationer also are not a source of a constitutional right to rehabilitation. Appellant argues that the state's right to impose a variety of probation conditions that infringe on the probationer's privacy for purposes of rehabilitation creates a correlative right in the probationer to receive effective rehabilitation. He analogizes to *Youngberg v. Romero,* —— U.S. ——, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), in which the United States Supreme Court held that when a state involuntarily commits a person for a psychological problem, the patient has a constitutional due process right to receive minimally adequate treatment. But the *Youngberg* Court expressly held that involuntarily committed patients are entitled to a higher level of treatment and conditions

than are convicted criminals. Appellant's situation, concerning a convicted criminal on probation, is more analogous to that of a convicted criminal in prison. Both kinds of persons are subjected to some form of punishment because of criminal conduct and not merely because of a psychological problem. Neither the Fourteenth Amendment's Due Process Clause nor the Eighth Amendment's Cruel and Unusual Punishment Clause (which are the constitutional provisions on which appellant relies) require a state to provide incarcerated prisoners with a rehabilitation program. *See Newman v. Alabama,* 559 F.2d 283 (5th Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Smith v. Schneckloth,* 414 F.2d 680 (9th Cir.1969); *State v. Kidwell,* 27 Ariz.App. 466, 556 P.2d 20 (1976).

■ To grant appellant the correlative right he seeks would require the state either to forego any attempt at rehabilitating him to avoid creation of the correlative right or to attempt to rehabilitate him to the exclusion of the other purposes of criminal punishment. Neither alternative is justified. The state and its courts may pursue all four purposes of punishment that are discussed above. To accomplish these purposes, a trial court has some discretion in deciding whether to grant probation, whether to include a jail term as a condition of probation, and whether to include other conditions of probation that would serve other purposes including rehabilitation. As probation itself is a matter of grace and not of right, *State v. Smith,* 112 Ariz. 416, 542 P.2d 1115 (1975), so too is rehabilitative treatment while on probation. We strongly encourage attempts at rehabilitation both for probationers and incarcerated prisoners and find it unfortunate that a potentially more effective method of treatment was not tried on appellant while still on probation. It may be that the failure to provide a different treatment was a contributing cause to appellant's subsequent crimes. Nevertheless, we will not interfere with the trial court's reasonable exercise of discretion in deciding that the other interests at stake required appellant's immediate imprisonment rather than continued probation

**512**

while the search goes on for another more effective method of rehabilitation. The fact of imprisonment and the length of the term imposed are permitted under the statutes, are supported by the facts, and are not cruel and unusual nor a violation of the due process notions of fundamental fairness.

Having searched the record for fundamental error pursuant to A.R.S. § 13–4035 and finding none, we affirm the probation revocation, the convictions, and the sentences.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.