687 P.2d 1230

**STATE of Arizona, Appellee,**

v.

**Fred Jamaal McNAIR, Jr., Appellant.**

**No. 6049.**

Supreme Court of Arizona,
In Banc.

Sept. 5, 1984.

Robert K. Corbin, Atty. Gen., William J. Schafer III and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

George M. Sterling, Jr. and John M. Antieau, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Fred Jamaal McNair, Jr., was convicted and adjudged guilty of armed robbery, a Class 2 felony, in violation of A.R.S. §§ 13–1901, –1902, –1904, 13–301, –302, –303, and 13–604. The trial judge made a finding that the defendant was on probation when the offense was committed and sentenced defendant to life without possibility of parole for twenty-five years pursuant to A.R.S. § 13–604.01. We have jurisdiction pursuant to A.R.S. §§ 13–4031, –4035, and Arizona Constitution, Article 6, § 5.

We must decide the following issues:

I. Was defendant properly convicted as an accomplice to armed robbery?

II. Did the trial court err in giving the jury a supplemental instruction on "culpable mental state"?

III. Was the trial court's refusal to give a theft instruction erroneous?

IV. Is A.R.S. § 13–604.01 unconstitutional?

V. Was the issue of whether defendant was on probation at the time of the offense properly decided?

VI. Was the failure to sever the trials of the two defendants in this case reversible error?

VII. Were defendant's prior burglary convictions properly admissible for impeachment purposes?

VIII. Was the prosecutor guilty of misconduct that constitutes reversible error?

The facts are the same as those of the companion case of *State v. Turner*, 141 Ariz. 470, 687 P.2d 1225 (1984). During the late evening of 1 April 1983 or early morning of 2 April 1983 defendant Fred McNair and a third party, Wilford Strong, met codefendant Nathaniel Turner in a club in south Phoenix. About 1 a.m. they drove to a U–Totem store to buy liquor, but due to the late hour they were unsuccessful. Defendant was driving, Turner was in the front seat, and Strong was in the back seat. After driving around for approximately two hours, they pulled into a Union 76 gas station located at Grant Street and Interstate 17 in Phoenix. They drove to the self-service island, remained there a few minutes, and then drove to the full-service island. The gas-station attendant, Alvy Robins, walked out to the car. Defendant asked Robins for some power steering fluid. Robins stated that he did not have any power steering fluid, but that he did have transmission fluid, which "would

work just as well." Robins walked back to the station building to obtain a can of transmission fluid. Defendant propped the hood open with a jack that he kept in the trunk of the car. Robins returned with the fluid and handed the can and a spout to defendant. Turner was standing near the front of the car.

While defendant was pouring the transmission fluid into the car, he asked Robins for some gasoline. Robins inserted the nozzle into the neck of the gas tank and set the handle so that it would pump automatically. Defendant then handed Robins the half-empty can of transmission fluid and indicated that he would not be using any more of the fluid. The jack was removed from the car's hood and it was replaced in the trunk by defendant. Robins testified that he observed several cans of transmission fluid in the trunk. Defendant then changed his mind and decided he wanted the half-empty can of transmission fluid. Robins turned around to retrieve the can from the pump island where he had placed it. As he turned back around Turner struck Robins in the face with the jack, and Robins fell to the ground. At this point either defendant or Turner demanded money from Robins, who took the only available money out of his pocket and handed it to the men, along with the office key. The two men returned to the car and drove away, heading east. During this time, Strong did not leave the car.

Although Robins' face was bleeding and his left eye was swollen, he was able to observe the license plate number of the car, and wrote this down on a credit card invoice. Robins called Crime Stop and gave a description of the vehicle, the license plate number, and a description of the three men occupying the car. Officer Lum of the Phoenix Police Department received this information in a "hot call" over his radio. At the same time he saw the defendant's vehicle coming towards him. He stopped the vehicle and returned it and its occupants to the gas station, where Robins identified the defendant as well as the other occupants of the car. Defendant testi-

fied that he had some of the victim's blood on his arm.

Defendant and Turner were tried together for armed robbery. Defendant testified twice. Originally, he testified that he never saw Turner leave the car after the car had pulled into the gas station. Upon retestifying, defendant stated that he did, indeed, see Turner outside the car. Defendant further testified that he did not see Turner with the jack in his hands and did not see Turner strike Robins.

Defendant was convicted and adjudged guilty of armed robbery, and sentenced pursuant to A.R.S. § 13–604.01. Defendant appeals the judgment of guilt and his sentence.

### ACCOMPLICE CONVICTION

■ Defendant first alleges that he was improperly convicted as an accomplice to armed robbery because he neither intended nor aided and abetted the commission of the crime. He argues that he was merely present at the scene of the crime and drove away because he was concerned about his own probation status and not because of any desire to aid Turner or facilitate Turner's escape. We do not agree.

■ There is no question that a robbery was committed, A.R.S. § 13–1902(A), and our statute states that:

A person commits armed robbery if, in the course of committing robbery as defined in § 13–1902, such person *or an accomplice:*

1. Is armed with a deadly weapon or a simulated deadly weapon; or

2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

A.R.S. § 13–1904(A) (emphasis added). We note that § 13–1904(A) uses the phrase "or an accomplice." An individual is guilty of armed robbery if his accomplice "uses or threatens to use a deadly weapon or dangerous instrument" during a robbery even if defendant himself did not come in contact with the weapon. *See e.g., State v. Church*, 109 Ariz. 39, 44, 504 P.2d 940, 945

(1973); *State v. Bettis*, 109 Ariz. 579, 580, 514 P.2d 712, 713 (1973). In the instant case, if Turner was defendant's accomplice and used a deadly weapon or dangerous instrument during commission of the robbery, defendant is also guilty of armed robbery.

■ Our legislature has stated that an accomplice is a person

who with the intent to promote or facilitate the commission of an offense:

1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense.

3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13–301. Under this definition, defendant could well be an accomplice of Turner. This does not mean, however, that Turner is not also an accomplice of defendant for the purposes of A.R.S. § 13–1904(A). As the Kentucky Supreme Court has noted:

The words "accomplice," "accessory," and "aider and abettor" are often used indiscriminately and interchangeably by courts and textbook writers on criminal law. But an "accomplice" may be one of the principal actors, or an aider and abettor or an accessory before the fact. The word includes in its meaning all persons who participate in the commission of a crime, whether they so participate as principals, aider and abettors, or accessories before the fact.

*Levering v. Commonwealth*, 132 Ky. 666, 677, 117 S.W. 253, 257 (1909) (citations omitted). A.R.S. § 13–301 defines accomplice in the traditional manner as one who, though not the main actor, is so connected to the offense that he could be convicted as either a principal or as an accessory before the fact. *See People v. Sweeney*, 213 N.Y. 37, 46, 106 N.E. 913, 917 (1914). This statute, A.R.S. § 13–301, however, must be read with the statute on criminal accountability which states in pertinent part:

A. A person is criminally accountable for the conduct of another if:

1. The person is made accountable for such conduct by the statute defining the offense; or

2. Acting with the culpable mental state sufficient for the commission of the offense, such person causes another person, whether or not such other person is capable of forming the culpable mental state, to engage in such conduct; or

3. The person is an accomplice of such other person in the commission of an offense.

A.R.S. § 13–303. When §§ 13–301 and –303 are read together, it appears that an accomplice may be either the principal or an accessory to the crime. We long ago stated:

[I]t is no ground for the reversal of a judgment because we are unable to ascertain from the evidence which of the two defendants actively committed the offense and which of the two defendants was the accomplice in fact—the law makes no distinction.

*Cline v. State*, 21 Ariz. 554, 556, 192 P. 1071, 1071 (1920). Simply stated, "an accomplice is one who knowingly and with criminal intent participates, associates, or concurs with another in the commission of a crime." *State v. Shields*, 81 S.D. 184, 186, 132 N.W.2d 384, 385 (1965). Turner was, therefore, an accomplice of the defendant.

Defendant and Turner arrived at the station together, with defendant driving. Defendant successfully distracted Robins, allowing Turner the opportunity to hit Robins with the jack. When Turner hit Robins defendant was standing close enough to get blood on his arm from Robins' wound. Defendant drove the car that transported Turner away from the crime scene. The jury could properly infer from these and other facts that the defendant planned and intended to aid and did participate in the commission of the robbery, a criminal venture, and/or provided means or opportunity so another person could commit the offense. A.R.S. § 13–301(2) & (3).

Although a defendant's presence at the time and place of the crime in the ab-

sence of preconcert does not establish guilt as an aider, abettor or principal, an intent to engage in the criminal venture may be shown by the relationship of the parties and their conduct before and after the offense.

*State v. (Raymond Curtis) Tison*, 129 Ariz. 546, 554, 633 P.2d 355, 363 (1981) (citations omitted). *Accord, State v. Parker*, 121 Ariz. 172, 173–74, 589 P.2d 46, 47–48 (App.1978). Sufficient evidence existed from which the jury could find that the defendant was an accomplice and guilty of the crime of armed robbery pursuant to A.R.S. § 13–1904(A).

## SUPPLEMENTAL INSTRUCTION ON "CULPABLE MENTAL STATE"

The trial judge, in instructing the jury, read the applicable statutes including A.R.S. § 13–303. Subsection (A) of § 13–303 reads:

A person is criminally accountable for the conduct of another if:

\* \* \* \* \* \*

2. Acting with the culpable mental state sufficient for the commission of the offense, such person causes another person, whether or not such other person is capable of forming the culpable mental state, to engage in such conduct;

While deliberating, the jury sent a note to the judge asking for the "legal definition" of "culpable." In response to the note the trial judge, after conferring with counsel, sent the jury the following definition:

"Culpable mental state" means intentionally or knowingly doing an act against the law.

The defendant's counsel, after first objecting to the word "knowingly," reluctantly agreed to this instruction. Less than fifteen minutes after this the jury returned a verdict of guilty.

■■■ Defendant contended during the motion for new trial, and contends on appeal, that the trial court's supplemental instruction defining culpable mental state allowed the jury to emphasize the "intent" element of accomplice liability at the expense of the "act" element. He argues

that because the jury asked for a definition of culpable liability, the jury must have convicted defendant under A.R.S. § 13–303(A)(2), which is not applicable to the present case. We do not agree for two reasons. First, the defendant did not object to the giving of the instruction and, absent specific and distinct objections, may not raise the issue on appeal. *State v. Edgar*, 126 Ariz. 206, 209, 613 P.2d 1262, 1265 (1980); Rule 21.3(c), Arizona Rules of Criminal Procedure, 17 A.R.S.

Second, we do not believe the jury was misled by the supplemental instruction. We have stated:

It is only when the instructions taken as a whole are such that it is reasonable to suppose the jury would be misled thereby that a case should be reversed for error therein. We think as good a test as any of whether specific sentences or phrases of the instructions contain reversible error is as follows: If any instruction directly contradicts the true rule of law so that the jury would be misled thereby on a material point, it is, of course, fatal; \* \* \*.

*Macias v. State*, 36 Ariz. 140, 153, 283 P. 711, 716 (1929). *See also, State v. Maloney*, 101 Ariz. 111, 114, 416 P.2d 544, 547 (1966). Giving A.R.S. § 13–303 in its entirety as the criminal accountability instruction did not contradict the "true rule of law" and mislead the jury on a material point. Based upon the evidence presented, the jury, after considering the definition of "culpable," could have decided subsection (A)(2) did not apply and found defendant criminally accountable for his co-defendant's conduct under subsection (A)(3) (liable if accomplice) or subsection (A)(1) (liable if made accountable by statute defining the offense, in this case A.R.S. § 13–1904). *Cf. State v. Woods*, 141 Ariz. 446, 456, 687 P.2d 1201, 1211 (1984) (only one form of verdict required for first-degree murder). Even if we assume subsection (A)(2) does not apply and overemphasizes the intent element, its reading was not materially misleading. The question of intent to aid and abet was properly before the court, as were defend-

ant's acts. We find no error. *See Maloney,* supra; *Macias,* supra.

## THEFT INSTRUCTION

Defendant argues that a lesser-included instruction on theft should have been given to the jury. Our theft statute reads in pertinent part:

A. A person commits theft if, without lawful authority, such person knowingly:

1. Controls property of another with the intent to deprive him of such property;

A.R.S. § 13–1802. Concerning lesser-included offenses generally, we have stated:

An instruction on a lesser-included offense is proper * * * if the crime is a lesser-included offense to the one charged and if the evidence otherwise supports the giving of the instruction. To constitute a lesser-included offense, the offense must be composed solely of some but not all of the elements of the greater crime so that it is impossible to have committed the crime charged without having committed the lesser one.

*State v. Garcia,* 141 Ariz. 97, 103, 685 P.2d 734, 740 (1984), quoting *State v. Celaya,* 135 Ariz. 248, 251, 660 P.2d 849, 852 (1983). *E.g., State v. Malloy,* 131 Ariz. 125, 129, 639 P.2d 315, 319 (1981); *State v. Dugan,* 125 Ariz. 194, 195–96, 608 P.2d 771, 772–73 (1980); *State v. Yarbrough,* 131 Ariz. 70, 72–73, 638 P.2d 737, 739–40 (App. 1981); Rule 23.3, Arizona Rules of Criminal Procedure, 17 A.R.S.

■ Theft is a lesser-included offense of robbery. *State v. Celaya,* supra, 135 Ariz. at 252, 660 P.2d at 853; *State v. Jackson,* 121 Ariz. 277, 279, 589 P.2d 1309, 1311 (1979). The evidence, however, must support the giving of a lesser-included offense instruction which may not be given when the state of the evidence is such that the defendant can only be guilty of the crime charged or not guilty at all. *E.g., State v. Jerousek,* 121 Ariz. 420, 428, 590 P.2d 1366, 1374 (1979); *State v. Brady,* 105 Ariz. 190, 197, 461 P.2d 488, 495 (1969). To require an instruction on theft, the evidence must show that the defendant intended to take property but without force. A.R.S. § 13–1802(A)(1). In the instant case, the defendant denied any intent to commit theft. For example, after testifying that he had only six dollars when he came into the station, the defendant stated on cross-examination:

Q How are you going to pay for twenty to twenty-five dollars worth of gas with six bucks?

A Well, if I didn't—well, okay. I would have got the money probably from one of them, if they had it.

Q Do you know what the term driveaway means?

A Driving a car away from somewhere.

Q Okay. Was it ever your intention to do what is known as a driveaway?

A No, not when I went into the station I can't say it was.

Q So you would have remained there and negotiated or talked with the service station attendant and try to, say, make the money up to him later or come back the next day or something to that effect?

A Yes. Yes, or use his phone.

A court is not required "to give instructions concerning a lesser offense where the defense testimony would prove complete innocence" of the lesser offense. *State v. Leon,* 104 Ariz. 297, 300, 451 P.2d 878, 891 (1969). Based upon the defense presented at trial, the evidence did not support a finding that the defendant intended to take property without using force. The defendant in the instant case, therefore, was guilty of armed robbery as an accomplice or not guilty at all. *See State v. Yarbrough,* supra, 131 Ariz. at 73, 638 P.2d at 740; *State v. Conroy,* 131 Ariz. 528, 532, 642 P.2d 873, 877 (App.1982); *State v. Leon,* supra, 104 Ariz. at 300, 451 P.2d at 891. The trial court properly refused defendant's request for a lesser-included offense instruction. We find no error.

## CONSTITUTIONALITY OF A.R.S. § 13–604.01

First, defendant submits that A.R.S. § 13–604.01 was not intended to apply to

the situation presented in this case. The statute reads in pertinent part:

A. Notwithstanding any provision of law to the contrary, a person convicted of any felony offense involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another if committed while the person is on probation for a conviction of a felony offense, \* \* \* shall be sentenced to life imprisonment and is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis \* \* \* until the person has served not less than twenty-five years.

■ Defendant argues that since he did not actually strike the victim with the jack, he cannot be sentenced under A.R.S. § 13–604.01. We do not agree. The language of the statute states that the felony offense has only to "involve" the use of a dangerous instrument or deadly weapon. It does not state that a defendant being sentenced under the statute must have used the instrument or weapon. Defendant was convicted of a felony "involving the use of a deadly weapon or dangerous instrument" which caused "serious physical injury" upon the victim. This was done while defendant was on probation. The legislative intent is clear; the statute applies in the present case.

■ Second, defendant alleges that the statute is vague and overbroad. We do not agree.

That the terms of a penal statute \* \* \* must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application

violates the first essential of due process of law.

*Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). *E.g., Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972); *Cramp v. Board of Public Instruction of Orange County, Florida,* 368 U.S. 278, 287, 82 S.Ct. 275, 280–81, 7 L.Ed.2d 285, 292 (1961); *Cohen v. State,* 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978). We find that the statute in question was clearly written and easily understandable by "men of common intelligence." If a person on probation for a felony offense commits another felony involving the use of a dangerous instrument or deadly weapon, then that person must be sentenced to a minimum of twenty-five years in prison. There is no ambiguity.

But defendant also alleges that his sentence is a violation of his right against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, Ariz. Const. Art. 2, § 15, and *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In *Solem,* the Court approved a four-part test for determining whether a sentence is excessive. The court must consider (1) the gravity of the offense, (2) the harshness of the penalty, (3) sentences imposed on similarly situated defendants in the same jurisdiction, and (4) sentences imposed for commission of the same crime in other jurisdictions. *Solem,* supra, 463 U.S. at ——, 103 S.Ct. at 3010–11, 77 L.Ed.2d at 650. We utilized this same test in *State v. Garcia,* 141 Ariz. 97, 99–100, 685 P.2d 734, 736–737 (1984).

As to the gravity of the offense this was a violent and senseless crime. The victim was seriously hurt, could have lost his eyesight, at least in one eye, and might have been more seriously injured. There was no provocation on the part of the victim and physical violence was not necessary to accomplish the theft, which could have been accomplished by mere threats. We believe

the crime was sufficiently grave to warrant severe punishment.

Neither do we think that the sentence imposed upon defendant is too harsh. Repeat offenders have typically received more severe sentences than first offenders. A.R.S. § 13–604; *see Solem*, supra, 463 U.S. at ——, 103 S.Ct. at 3013, 77 L.Ed.2d at 653. Likewise, dangerous offenders have received more severe sentences than those who are considered non-dangerous. A.R.S. § 13–604. In light of the fact that the offense was committed while on probation, a life sentence is not unduly harsh. As we previously have stated, "the legislature has determined the appropriate punishment for the defendant's crime. We need not determine whether the sentence is fair in our view or whether we would impose the same sentence. We must determine only whether it violates the Eighth Amendment as being excessively harsh." *Garcia*, supra, 141 Ariz. at 100, 685 P.2d at 737. *Accord, Solem*, supra, 463 U.S. at ——, n. 16, 103 S.Ct. at 3009, n. 16, 77 L.Ed.2d at 649, n. 16; *State v. Marquez*, 127 Ariz. 98, 102, 618 P.2d 592, 596 (1980).

Next, we compare defendant's sentence to those imposed for other and similar crimes in this jurisdiction. Life sentences for assaults by a prisoner consistently have been upheld in Arizona. *E.g., Garcia*, supra; *State v. (Armando James) Cruz*, 127 Ariz. 33, 617 P.2d 1149 (1980); *State v. Barnett*, 127 Ariz. 16, 617 P.2d 1132 (1980); A.R.S. § 13–1206.[1] For armed robbery with two prior burglary convictions a defendant could receive a maximum sentence of twenty-eight years, with eighteen years and eight months minimum "flat time." *See* A.R.S. §§ 13–701, 13–604(D). In *State v. Harris*, 133 Ariz. 30, 648 P.2d 145 (App. 1982), defendant received twenty-two years, fifteen years "flat time," for armed robbery with two prior felony convictions.

The defendant was neither on probation nor parole at the time of the armed robbery. In *State v. Christopher*, 133 Ariz. 508, 652 P.2d 1031 (1982), the defendant was on probation for child molestation when he committed additional child molestations. Defendant received a term of twenty-five years for each new offense. We upheld this sentence as constitutional. As the *Solem* court noted, "[r]eviewing courts * * * should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes * * *," and "a state is justified in punishing a recidivist more severely than it punishes a first offender." *Solem*, supra, 463 U.S. at ——, ——, 103 S.Ct. at 3009, 3013, 77 L.Ed.2d at 649, 653. We believe that the defendant's sentence is not disproportionate when compared with other sentences for other and similar crimes in this jurisdiction.[2]

Defendant's sentence is also proportional with sentences imposed for the same or similar crimes in other jurisdictions. For example, a *first* conviction for armed robbery may result in a twenty-five year to life sentence in Arkansas (Ark.Stat.Ann. §§ 41–901, –1004, –2101), ten to thirty years or life in Missouri (Mo.Rev.Stat. §§ 558.011, 569.020), ten years to life in Tennessee (Tenn.Code Ann. § 39–2–501), ten years to life in Alabama (Ala.Code §§ 13A–5–6, 13A–8–41), five to ninety-nine years without probation or parole in Louisiana (La.Rev.Stat.Ann. § 14:64) (West), five to ninety-nine years or life in Texas (Tex. Penal Code.Ann. § 29.03, 12.32), thirty years to life in Florida (§§ 775.082, 812.13) (West), and five years to life in Idaho (Idaho Code §§ 18–6501, –6503). In the present case, defendant is being sentenced for armed robbery committed while on pro-

---

1. A.R.S. § 13–1206 was recently amended by HB 2260, and assault by a prisoner reduced to a Class 3 felony. We note that, at that time, the legislature could have amended A.R.S. § 13–604.01 and chose not to do so.

2. We note that on 3 August 1984, A.R.S. § 13–604 was amended to provide that a person convicted of a serious offense, who has also been convicted of two prior serious offenses, shall be sentenced to life imprisonment without possibility of release for twenty-five years. *Id.* at (N). "Serious offense" includes armed robbery and first-degree burglary. *Id.* at (O)(8) & (9).

bation for a prior felony conviction. Defendant's conviction is not disproportionate with sentences for the same or similar crimes in other jurisdictions.

■ Finally, we address defendant's allegation that we must apply *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) to the present case. In *Enmund,* the United States Supreme Court held that a defendant may not receive the death penalty for murder if the defendant did not kill, attempt to kill, or intend to kill. *Id.* at 801, 102 S.Ct. at 3379, 73 L.Ed.2d at 1154. In the instant case, defendant alleges that because he did not attempt or intend to rob that he should not receive severe punishment. We do not agree. The United States Supreme Court has noted that death penalties are unique. *Furman v. Georgia,* 408 U.S. 238, 306, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346, 388 (1972) (Stewart, J., concurring). And we have noted that "the decisions applying the prohibition of the cruel and unusual punishment in capital cases are of limited assistance in deciding the constitutionality of a life sentence * * *." *State v. Montes,* 136 Ariz. 491, 497, 667 P.2d 191, 197 (1983).

■ We agree with the rationale of *Furman* and *Montes* and do not find *Enmund* applicable to the present case. We are satisfied that defendant's conviction is proportional under *Solem v. Helm,* and find no constitutional infirmities in A.R.S. § 13–604.01 as applied to the facts in this case.

## DETERMINATION OF PROBATION

■ Defendant argues that a jury finding that the crime was committed while defendant was on probation should be required for purposes of sentencing under A.R.S. § 13–604.01. We recently held that "A.R.S. § 13–604.01 does not contain language that requires a finding by the trier of fact that the defendant was on parole. That the crime was committed while the defendant was on parole is in the nature of an aggravating circumstance which enhances the possible penalty." *State v. Turner,* 141 Ariz. 470, 475, 687 P.2d 1225,

1230 (1984). The same reasoning applies when determining whether defendant was on probation at the time of the crime. It must, of course, appear from the record that the defendant was, in fact, on probation at the time of the offense, but this finding need not be made by the jury.

■ In the instant case, like his co-defendant, defendant McNair admitted while on the witness stand that he was on probation at the time of the crime. At defendant's sentencing hearing the trial judge stated that he had read the probation presentence report. The judge then made a formal finding that the defendant was on probation when the armed robbery was committed, and stated that sentencing under A.R.S. § 13–604.01 was mandatory. We find no error.

## SEVERANCE

Defendant argues that his trial should have been severed from Turner's trial for two reasons: (1) their defenses were antagonistic and (2) defendant was prevented from presenting exculpatory evidence (that Turner had been released from prison three months before the robbery) because of the joint trials. We have already ruled against defendant concerning the antagonistic defenses issue. *State v. Turner,* supra, 140 Ariz. at 472–473, 687 P.2d at 1227–1228.

As to the second allegation, during trial defendant was precluded from questioning co-defendant Turner to show that Turner recently had been released from an eight-year prison term. At this time Turner had already been impeached by his prior felony conviction. Strong testified that defendant and Turner knew each other prior to the evening the crime was committed. Defendant testified that he had only met Turner the night of the robbery. Defendant argues he could not have planned the armed robbery because he had not known Turner long enough to do so, and evidence of the short period of time that Turner had been out of jail would support defendant's testi-

mony that he had only met Turner the night of the offense.

While we agree that the length of time a defendant has known his companions is something to be considered when determining accomplice liability, *State v. Villegas,* 101 Ariz. 465, 467, 420 P.2d 940, 942 (1966), in the instant case it does not appear that such evidence would be of sufficient weight to affect the outcome of the trial. Even if we agree that the defendant should have been able to present this evidence to the jury, in light of the overwhelming evidence presented against the defendant, we do not think that this exclusion "contribute[d] significantly to the verdict," *State v. Sorrell,* 132 Ariz. 328, 330, 645 P.2d 1242, 1243 (1982). The exclusion of the evidence was not prejudicial. We find no reversible error.

## PRIOR CONVICTIONS

Defendant argues that it was error for the trial court to admit into evidence defendant's two prior burglary convictions which occurred in February, 1982 and December, 1980. Defendant asserts that burglary does not involve dishonesty, the trial court did not base its finding of admissibility upon specific facts and circumstances, and his credibility was not in issue.

It is unnecessary that we decide whether burglary involved dishonesty or untruthfulness because burglary, a felony, involves imprisonment in excess of one year. Rule 609(a), Arizona Rules of Evidence, 17A A.R.S.; *State v. McElyea,* 130 Ariz. 185, 188, 635 P.2d 170, 173 (1981).

Admittedly, the state has the burden of proving that the probative value of prior convictions outweighs their prejudicial effect. *State v. Wilson,* 128 Ariz. 422, 424, 626 P.2d 152, 154 (App.1981); *State v. Becerill,* 124 Ariz. 535, 537, 606 P.2d 25, 27 (App.1979). The trial court must make a finding somewhere in the record that the probative value outweighs the prejudicial effect. *See State v. Sullivan,* 130 Ariz. 213, 217, 635 P.2d 501, 505

(1981); *State v. Ellerson,* 125 Ariz. 249, 252, 609 P.2d 64, 67 (1980); *State v. Aguirre,* 130 Ariz. 54, 57, 633 P.2d 1047, 1050 (App.1981). In the instant case, after hearing evidence by the state of the date, place, and nature of the prior conviction, the trial court specifically found that "the probative value outweighs the possible prejudicial effect under the circumstances * * *." We find no error in the trial court's ruling.

Neither do we find that defendant's credibility was not in issue. The jury had to decide whether defendant was telling the truth concerning such issues as whether he intended to drive away without paying for the gasoline, whether he intended that money be taken from the person of the victim, whether he intended to help co-defendant Turner escape after the victim was injured, and how he could have blood on his shirt and not see the victim being hit with the jack. The defendant's credibility was, indeed, in issue. We will not overturn the ruling of a trial judge absent an abuse of discretion. *Sullivan,* supra, 130 Ariz. at 217, 635 P.2d at 505. We find no abuse of discretion in the instant case.

## PROSECUTORIAL MISCONDUCT

Defendant asserts that the prosecutor committed reversible error by making the following remarks concerning prior convictions and credibility:

[Turner and McNair], between the two of them, [have] four prior felony convictions.

\* \* \* \* \* \*

Like I said before, these gentlemen here, this is about the fourth or fifth time they're coming to you and saying, "Believe me, trust me."

This appeal is the first time that defendant has raised this issue. "By failing to make a timely, specific objection to the prosecutor's remarks * * * appellant has waived these issues on appeal absent a finding of

fundamental error." *State v. Thomas,* 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981).

We recently noted that

[w]e have long recognized that wide latitude is given in closing argument, and that counsel may comment on and argue all inferences which can reasonably be drawn from the evidence adduced at trial. However, such argument must not be based on matters which were not or could not have been received in evidence.

*State v. Woods,* 141 Ariz. 446, 454, 687 P.2d 1201, 1209 (1984)(citations omitted). In the present case all the convictions referred to were admitted by defendant and co-defendant while on the stand. The prosecutor was commenting, therefore, on evidence that had been presented at trial. We find no error.

We have searched the record pursuant to A.R.S. § 13–4035 and find no error.

Defendant's conviction and sentence are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, Justice, specially concurring.

I concur with all aspects of the opinion except the discussion of the constitutionality of A.R.S. § 13–604.01. My views on that issue are set forth in my dissent in *State v. Garcia,* 141 Ariz. 97, 685 P.2d 734 (1984). I adhere to the position that the legislature may not, consistent with the constitution, deprive trial court judges of discretion to weigh the facts of the individual offense and offender in order to set appropriate punishment within the range specified by the legislature. The legislature may require enhancement of punishment, but not prescribe one specific punishment to apply to all offenses and offenders who fall within the ambit of the statute.

Because I see no reasonable possibility that this offender would have received less than a life sentence for this offense, I concur in the result as well as in all other parts of the opinion.