783 P.2d 247

**STATE of Arizona, Appellee,**

v.

**Martino Elliott MARCHESANO, Appellant.**

**No. 1 CA–CR 11784.**

Court of Appeals of Arizona, Division 1, Department B.

June 13, 1989.

Review Denied Dec. 12, 1989.

Robert K. Corbin, Atty. Gen. by Jessica
G. Funkhouser, Chief Counsel, Crim. Div.,

and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, for appellant.

## OPINION

FIDEL, Presiding Judge.

Does accomplice liability extend to the crime of attempted premeditated murder? That is the principal issue decided in this case. We answer that question affirmatively in holding that defendant was properly convicted of three crimes after trial by jury: (1) the armed robbery of a restaurant; (2) the attempted murder of the restaurant owner, whom defendant's *accomplice* shot at during their escape; (3) the attempted murder of a policeman, whom defendant shot at during their escape.

## I. FACTS

In the early evening of May 3, 1986, defendant Marchesano and a companion, Allen Tommasone, arrived at the Phoenix home of Clyde Peed, defendant's lifelong friend. Marchesano and Tommasone carried three guns into Peed's home. Later that evening the three put the weapons into defendant's jeep and set out with Peed as driver. Peed parked near some apartments and waited while defendant and Tommasone entered a restaurant nearby. Inside the restaurant, defendant approached the cash register and asked the manager for change. As the manager opened the cash drawer, Marchesano or Tommasone said, "We are going to take the money." Tommasone pointed a gun at the manager; one witness also saw him point it at defendant. Both defendant and Tommasone took money from the register. Then defendant, stuffing money in his pocket, grabbed Tommasone's arm and said, "Let's go." The

restaurant owner, who witnessed these events, followed the two outside. As he emerged, one of the men came from behind the building and fired a shot, which struck the owner in the arm.[1]

Defendant and Tommasone then ran to the jeep where Peed sat waiting. As Peed drove off, Marchesano and Tommasone argued over the shooting, and Tommasone stated that he thought he had "just shot somebody and killed them."

Within minutes, Phoenix Police Officer Munsey approached the jeep in his patrol car and directed it to the side of the road. According to Peed, Tommasone said, "I am going to have to kill this cop," and Peed pleaded with Tommasone not to do it.[2]

As the jeep pulled over, Officer Munsey saw defendant, who was seated in the back, bend forward, raise up with a rifle, and point the rifle at Munsey's car. Munsey ducked and threw his car into reverse. As he backed away, he heard a burst of gunfire and felt bullets strike the car. A witness who lived nearby saw Peed and Tommasone leave the jeep and run off down the street. The same witness saw defendant leave the jeep and fire at the police car before he ran. Officer Munsey returned defendant's fire and hit him in the back. Defendant dropped his weapon and fled to a backyard, where a police dog later found him. A police dog also found Peed's hiding place, but Tommasone escaped. The next day, before he could be arrested, Tommasone killed himself.

Evidence showed that Officer Munsey's car was hit five times: bullets pierced the windshield, the driver's headrest, the loudspeaker, the right front push bar, and the left hood.

At trial, defendant admitted participation in the armed robbery, but claimed that he acted under duress. He testified that he had no idea that Tommasone meant to hold

---

1. The evidence suggests that Tommasone fired this shot, and does not support the conclusion beyond a reasonable doubt that the defendant did so. Accordingly, we assume for the purpose of this opinion that Tommasone shot the restaurant owner. This frames the issue of defen-

dant's liability as accomplice for Tommasone's crime.

2. Two police officers testified that when they interviewed Peed, he attributed this statement to defendant. At trial, however, Peed attributed it to Tommasone.

up the restaurant until, after defendant had asked the manager for change, Tommasone pointed the gun at defendant and told him to take money from the register. He claimed that he complied out of fear. Defendant also testified that, when Tommasone stated his intent to shoot the officer, defendant began firing in order to warn the officer away. He admitted that one of his shots might have stricken the driver's side of the officer's front windshield, but insisted that he never intended to hit the officer or his car.

Defendant was tried before a jury on charges of Count I, armed robbery; Count II, attempted murder in the first degree (premeditated attempt to cause the death of the restaurant owner); and Count III, attempted murder in the first degree (premeditated attempt to cause the death of Officer Craig Munsey of the Phoenix Police Department). All counts were charged as dangerous offenses. *See* A.R.S. § 13–604(G). All of the offenses were class 2 felonies.

After presentation of the evidence, the trial court instructed the jury on defendant's theories of duress and justification. Defendant claimed that he had participated in the armed robbery out of duress and that he had fired at Officer Munsey in a justified effort to save Munsey's life. Defendant did not want the jury instructed on lesser included offenses, so the case was submitted on "an all or nothing basis."

The jury found defendant guilty on all counts. For Count I, armed robbery, defendant was sentenced to serve an aggravated term of sixteen years; for Count II, attempted murder of the restaurant owner, defendant was sentenced to serve an aggravated term of twelve years; for Count III, attempted murder of Officer Munsey, defendant was sentenced to serve an aggravated term of twenty-one years. The court ordered the sentence on Count III to run consecutively to the concurrent sentences imposed for Counts I and II. A $100 felony assessment was imposed for each count, but no restitution was ordered.[3]

Defendant raises three issues on appeal: (1) He argues that he was entitled to acquittal on Count II, because the evidence established only that Tommasone shot at the restaurant owner and did not establish that he, the defendant, premeditated, intended, or attempted to cause the restaurant owner's death. (2) He argues that his duress defense to Counts I and II was prejudicially diminished by the trial court's refusal to admit evidence of a "psychiatric autopsy" of Tommasone. (3) He argues that the trial court committed fundamental error by failing to instruct the jury *sua sponte* to consider the defense of duress with respect to Count III, the attempted murder of Officer Munsey. We reject each of these arguments and affirm.

## II. COUNT II: WAS THE EVIDENCE OF PREMEDITATION INSUFFICIENT?

### A. *Waiver*

■ Defendant argues first that he was entitled to a judgment of acquittal on Count II in the absence of evidence that he personally premeditated the attempted murder of the restaurant owner. Although defendant moved for such a judgment at the close of the state's evidence pursuant to Rule 20, 17 A.R.S. Arizona Rules of Criminal Procedure, the state argues that he waived the issue by the failure to renew his motion at the close of all the evidence.

■ We find no waiver. Rule 20 does not require renewal of the motion. *See State v. Blackhoop*, 158 Ariz. 472, 763 P.2d 536 (App.1988).[4] Rather, if the motion is denied following presentation of the state's case, the defendant must elect whether to rest on the motion or proceed to present his case. If he presents his case,

---

3. Restitution is required in all criminal cases. *See* A.R.S. §§ 13–603(C) and 13–804. However, the state did not cross-appeal, and therefore we do not disturb this order. *State v. Ambalong*, 150 Ariz. 380, 723 P.2d 729 (App.1986).

4. For an in-depth discussion of the effect of a trial court's denial of a Rule 20 motion for judgment of acquittal prior to verdict, *see State ex rel. Hyder v. Superior Court*, 128 Ariz. 216, 624 P.2d 1264 (1981).

he takes the chances of having deficiencies in the state's case supplied by later testimony of either the defense or prosecution. [On appeal] the question of the sufficiency of the evidence to sustain the verdict ... is then determined ... by a consideration of all the evidence presented in the case. *State v. Weis,* 92 Ariz. 254, 261, 375 P.2d 735, 740 [1962].

*State v. Villegas,* 101 Ariz. 465, 467, 420 P.2d 940, 942 (1966). Thus, failure to renew a Rule 20 motion for judgment of acquittal does not constitute a waiver. Rather, defendant's election to proceed permits the state to relieve any deficiency in its case through evidence elicited from defense witnesses or on rebuttal. *Id.* The issue of the sufficiency of the evidence overall remains.[5]

B. *Evidence That Marchesano Was An Accomplice*

■ By the jury's verdict on Count II, defendant was convicted of attempting the first degree murder of the restaurant owner, who was shot as defendant and Tommasone fled the restaurant toward their waiting jeep. Defendant argues that he was entitled to acquittal on this count because no evidence showed that he, acting with premeditation, either intended or attempted that man's death.

The evidence established that defendant brought three guns to Phoenix, intending to deliver them to Tommasone. One, a loaded pistol, was taken into the restaurant where the robbery occurred. It appears that Tommasone had its possession throughout the episode. Defendant claimed that he was surprised and afraid for his own safety, once inside the restaurant, when he saw the gun in Tommasone's hand. He claimed that Tommasome aimed the gun at him and directed him to take the money. He was not Tommasone's accomplice, he claimed, but an unwilling participant under duress with no responsibility

for the shot that Tommasone fired as they fled.

On review, this court will view the evidence in the light most favorable to sustaining the jury's verdict. *State v. Hutton,* 143 Ariz. 386, 694 P.2d 216 (1985). Reversal is warranted only in the absence of probative evidence to support the verdict. *State v. Girdler,* 138 Ariz. 482, 675 P.2d 1301 (1983), *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984). The jury was not required to accept defendant's theory of the case. Rather, the jury was free to conclude, as it obviously did, that Marchesano and Tommasone entered the restaurant with the concerted intent to engage in crime.

A.R.S. § 13–301 defines an accomplice as a person who

with intent to promote or facilitate the commission of an offense:

1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person 'in planning or committing the offense.

3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13–301.

■ An accomplice is one who, knowingly and with criminal intent, participates, associates, or concurs with another in commission of a crime. The word accomplice "includes ... all persons who participate in the commission of a crime, whether ... as principals, aiders and abettors, or accessories before the fact." *State v. McNair,* 141 Ariz. 475, 480, 687 P.2d 1230, 1235 (1984), quoting *Levering v. Commonwealth,* 132 Ky. 666, 677, 117 S.W. 253, 257 (1909).

We find the evidence sufficient to permit the jury's conclusion that defendant acted as Tommasone's accomplice in robbing the restaurant. Accordingly the evidence warranted the jury's finding of guilt as to Count I, armed robbery. The question arises, however, as to Count II, whether

---

**5.** In any event this court must review the sufficiency of evidence *sua sponte.* Where the evidence is insufficient, fundamental error exists and reversal is required. *See* A.R.S. § 13–4035; *State v. James,* 110 Ariz. 334, 519 P.2d 33 (1974)

(reviewing court must search record for fundamental error); *State v. Eliason,* 25 Ariz.App. 523, 544 P.2d 1124 (1976) (where evidence insufficient to support conviction, conviction vacated).

accomplice liability extends to the crime of attempted first degree murder—a crime which includes as an element premeditation on the perpetrator's part.

### C. *Does Accomplice Liability Extend to Attempted First Degree Murder?*

■ Defendant argues that he must be acquitted of Count II because no evidence was presented to show that he had the requisite culpable mental state to warrant a conviction for attempted murder. He points out that the felony murder rule does not apply because no one died and that *attempted* felony murder is not a cognizable crime in Arizona.[6]

The state does not invoke the felony murder rule to sustain defendant's conviction on Count II. Rather, it invokes the rule of *accomplice* liability. The state argues that appellant's liability as Tommasone's accomplice extends to Tommasone's attempted first degree murder of the restaurant owner because an accomplice may be held accountable for any acts—including the perpetrator's premeditated acts—that were a natural and probable consequence of the criminal scheme that the accomplice aided.

■ In a first-degree murder prosecution, the state bears the burden of proving premeditation beyond a reasonable doubt. *State v. White,* 144 Ariz. 245, 697 P.2d 328 (1985). Furthermore, an *attempt* to commit a crime requires the *intent* to commit that crime. *State v. Wilson,* 120 Ariz. 72, 584 P.2d 53 (App.1978). In *State v. Moya,* the Arizona Supreme Court held that to show premeditation,

> the state must prove that defendant acted with either the intention or the knowledge that he would kill ... and that such

intention or knowledge preceded the killing by a length of time to permit reflection.

129 Ariz. 64, 66, 628 P.2d 947, 949 (1981). The necessary premeditation "may be as instantaneous as successive thoughts of the mind and may be proven by either direct or circumstantial evidence." *State v. Kreps,* 146 Ariz. 446, 449, 706 P.2d 1213, 1216 (1985).

Assuming that Tommasone shot the restaurant owner, the evidence was sufficient to permit the trier of fact to find premeditation on his part. The evidence established that Tommasone entered a restaurant armed for robbery, perpetrated the robbery, and paused in flight long enough to aim and fire at a pursuer, striking him. From such evidence an inference of reflection could be drawn.

■ The issue then arises whether the *premeditation* of *Tommasone* may be attributed to the defendant as his accomplice. Under the accomplice theory of accountability, each participant in a criminal venture is criminally accountable for the other's *acts. State v. Jobe,* 157 Ariz. 328, 331, 757 P.2d 604, 607 (App.1988) (citing *McNair,* 141 Ariz. at 480, 687 P.2d at 1235); *State v. Collins,* 111 Ariz. 303, 307, 528 P.2d 829, 833 (1974). A.R.S. § 13–303(A) succinctly states this rule of liability:

> A. A person is criminally accountable for the conduct of another if:
>
> . . . .
>
> 3. The person is an accomplice of such other person in the commission of an offense.

The question now before us is whether, in the attribution of an accomplice's conduct,

---

6. The felony murder rule is codified in A.R.S. § 13–1105(A)(2). Section 13–1105(A) provides:
A person commits first degree murder if:
1. Intending or knowing that his conduct will cause death, such person causes the death of another with premeditation; or
2. Acting either alone or with one or more other persons such person commits or attempts to commit sexual conduct with a minor under § 13–1405, sexual assault under § 13–1406, molestation of a child under § 13–1410, narcotics offenses under § 13–3408, subsection A, paragraph 7 or § 13–3409, kidnapping under § 13–1304, burglary under § 13–1506, 13–1507 or 13–1508, arson of an occupied structure under § 13–1704, robbery under § 13–1902, 13–1903 or 13–1904, escape under § 13–2503 or 13–2504 or child abuse under § 13–3623, subsection B, paragraph 1, and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person.

the law also attributes the accomplice's culpable state of mind.

Accomplice liability is based on the proposition that one is criminally responsible "for *everything* done by his confederate *which was a probable and natural consequence of their common plan.*" *Karlos v. State,* 476 N.E.2d 819, 822 (Ind.1985) citing *Proctor v. State,* 272 Ind. 357, 360, 397 N.E.2d 980, 983 (1979) (emphasis added). The accessory need not act out each element of the charged offense; the acts of one accomplice are imputed to all. *Id. See also People v. Hammond,* 181 Cal.App.3d 463, 467–68, 226 Cal.Rptr. 475, 477–78 (1986).

In *Hammond,* defendant was found guilty of murder, attempted murder, and robbery on an accomplice theory. Although Hammond's involvement in the crimes had been solely as get-away driver, *Id.* at 466, 226 Cal.Rptr. at 476, he was criminally responsible for his accomplice's attempted murder. Like defendant in this case, Hammond argued that attempted murder requires a specific intent to kill and that, therefore, an accomplice's liability for an attempted murder depends upon his "shar[ing] the perpetrator's intent." *Id.* at 467, 226 Cal.Rptr. at 477 (citations omitted). The court held that Hammond "was liable not only for the robbery which he intended to assist but also for any natural and probable consequences thereof." *Id.* at 467–68, 226 Cal.Rptr. at 477–78. In support of this holding, the court pointed to the California Supreme Court's earlier decision in *People v. Beeman,* 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984). In *Beeman,* the court stated that to "share" the perpetrator's intent does not mean the aider and abettor is prepared to commit the offense by his own act. All that is needed is a knowing intent to assist the perpetrator's commission of the underlying crime. Once that intent is formed, the liability of an aider and abettor "extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages." *Id.* at 560, 199 Cal.Rptr. at 68, 674 P.2d at 1326.

The California Supreme Court further explained in *People v. Croy,* 41 Cal.3d 1, 221 Cal.Rptr. 592, 710 P.2d 392 (1985), that aider and abettor liability

is vicarious ... [and] if the acts [of the aider and abettor] are undertaken with the intent that the actual perpetrator's purpose be facilitated thereby, he is a principal and ... is guilty not only of the offense he intended to facilitate or encourage, *but also of any reasonably foreseeable offense committed by the person he aids and abets....*

It follows that a defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. *It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which Beeman holds must be found by the jury.*

*Id.* at 12 n. 5, 221 Cal.Rptr. at 597 n. 5, 710 P.2d 398 n. 5 (emphasis added).

Arizona courts have long acknowledged that joint participation in a general felonious plan is enough to hold an accomplice liable as principal for any crime committed in execution of the plan. *See State v. Tison,* 129 Ariz. 546, 553, 633 P.2d 355, 362 (1981); *State v. Collins,* 111 Ariz. 303, 307, 528 P.2d 829, 833 (1974); *State v. Doty,* 110 Ariz. 348, 349, 519 P.2d 47, 48 (1974); *State v. Weis,* 92 Ariz. 254, 262, 375 P.2d 735, 741 (1962). In *State v. Collins,* our supreme court employed a foreseeability standard to uphold the first degree felony murder conviction of an accomplice. The court stated, "The killing [by the defendant's armed accomplice] was part of a chain of events which the defendant's deliberate acts in perpetrating the robbery had set in motion and was a risk reasonably to be foreseen." 111 Ariz. at 307, 528 P.2d at 833.

■ We recognize that reasonable foreseeability of death is an insufficiently stringent measure of culpable state of mind to justify *capital punishment* as a consequence of accomplice liability. *See Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Not even in capital punishment cases however, must the accomplice be proven to have shared the perpetrator's premeditation and intent, the standard that defendant contends for in this case. Rather, a divided U.S. Supreme Court has told us, a defendant may be sentenced to death for a murder by an accomplice, though the defendant did not himself intend the death, if the defendant participated in a "major" way, "with reckless indifference to human life," in criminal activities "known to carry a grave risk of death," and if an accomplice engaged in premeditated killing in the course of those activities. *Id.* at 158, 107 S.Ct. at 1688.

Though the *Tison* standard, essentially a "conscious indifference" standard, must be met to support a death sentence on grounds of accomplice liability, no Arizona case suggests that the elevated *Tison* standard of culpability must be met to support a lesser sentence for an accomplice to a premeditated crime. Rather, the *Collins/Hammond* rule of reasonable foreseeability endures, and we adhere to it today.

Defendant and Tommasone entered the restaurant with a weapon and committed a robbery within. The evidence supported an inference that defendant willingly participated in doing whatever was necessary to complete the robbery and the escape. The jury could reasonably have inferred, not only from defendant's participation in the robbery, but also from his having supplied the weapons, that defendant accepted the risk that his accomplice would deliberately shoot to kill during the robbery or the escape. Because Tommasone's attempted murder of the restaurant owner was a readily foreseeable incident of their flight from the scene of an armed crime, accomplice liability attached to defendant, and we affirm his conviction on Count II.

## III. DID THE TRIAL COURT ERR IN PRECLUDING EVIDENCE RELATING TO A PSYCHIATRIC AUTOPSY OF DEFENDANT'S DECEASED ACCOMPLICE?

■ Defendant claims that the trial court should have permitted Dr. Otto Bendheim to testify concerning a "psychiatric autopsy" of defendant's accomplice. Defendant offered Dr. Bendheim's posthumous analysis of Tommasone's character in order to support his duress defense. Drawing an analogy to self-defense, defendant claims that evidence of his accomplice's belligerent and aggressive character was admissible to aid the jury in determining the validity of his claim that he acted under duress.

After considering defendant's offer of proof, the trial court ruled:

THE COURT: I will state for the record that the court notes that the proposed testimony by Dr. Bendheim does not relate directly to the accomplice's mental state at the time of the offenses or, indeed, to the mental state of the defendant. It simply provides a background of Tommasone [defendant's accomplice] which is consistent with what he did and what he did, at least as far as the robbery and attempted murder is concerned, is not even at issue. Everyone concedes Tommasone's guilt.

Also, the court notes that the defendant's testimony does not involve any more than a claim that Tommasone unexpectedly turned a gun on the defendant and implied duress to him in the commission of the robbery by the defendant.

. . . .

The defendant's testimony did not involve any past relationship with Tommasone, any past knowledge of Tommasone, any past fear of Tommasone or any past duress of Tommasone. This case can only be resolved by the jury evaluating the [credibility] of the witnesses at trial and especially the claim of the defendant that the gun was turned on him at the time of the robbery and his desire to or claimed desire to protect the policeman.

There is no issue as to what Tommasone did or what he was like. Whatever he was like apparently was unknown to the defendant....

....

... He [defendant] simply claimed there was an unexpected event that occurred when Tommasone turned the gun on him and, in fact, he wasn't even afraid of Tommasone, it was just that the gun was on him at that particular time.

These findings are supported by the record. As the state notes, some jurisdictions have admitted psychiatric autopsies when the issue is the deceased's state of mind at the time of death or suicide.[7] Here, however, the decedent's mental state was not disputed. While the psychiatric autopsy would have contributed to the jury's information concerning Tommasone's belligerent character, the evidence of Tommasone's acts placed that issue beyond doubt. The true issue was whether Tommasone directed that belligerence toward defendant and forced his participation in the crime. On that issue the trial court reasonably exercised its discretion to reject the evidence. *State v. Lewis,* 129 N.H. 787, 533 A.2d 358 (1987).

### IV. COUNT III: WAS IT FUNDAMENTAL ERROR FOR THE TRIAL COURT TO FAIL SUA SPONTE TO INSTRUCT THE JURY ON DURESS?

█ Defendant's third claim of error has no merit. The trial court did not instruct the jury on duress as to Count III, the attempted murder of Officer Munsey. Defendant did not object. He now claims that the trial court's failure constitutes fundamental error. It is a rare case where the omission of an instruction without objection constitutes fundamental error. *State v. Zaragoza,* 135 Ariz. 63, 659 P.2d 22, *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983). In this case, defendant's theory for Count III was justi-

fication, not duress. He requested a justification instruction only, and the trial court gave the instruction that he asked. Defendant claimed that he fired at the officer to warn him. He did not claim to have fired in fear of Tommasone. The jury was instructed on defendant's theory of defense. The trial court's failure to instruct the jury *sua sponte* on a theory that defendant did not advance is hardly fundamental error.

### IV. CONCLUSION

For all of the foregoing reasons, we affirm the convictions and sentences imposed.

EUBANK and JACOBSON, JJ., concur.

---

7. *See Harvey v. Raleigh Police Department,* 85 N.C.App. 540, 355 S.E.2d 147 (1987); *Beaver v. Hamby,* 587 F.Supp. 88 (M.D.Tenn.1983); *Bartram v. State,* 33 Md.App. 115, 364 A.2d 1119 (1976). They have not been admitted when a deceased's state of mind is not relevant. *State v. Lewis,* 129 N.H. 787, 533 A.2d 358 (1987); *Thompson v. Mayes,* 707 S.W.2d 951 (Tex.App. 1986).