570 P.2d 1080

The STATE of Arizona, Appellee,

v.

**Donato GARCIA, George Luis Bustamonte, and Ricardo Garcia Mota, Appellants.**

Nos. 2 CA–CR 901, 2 CA–CR 904.

Court of Appeals of Arizona, Division 2.

Aug. 22, 1977.

Rehearing Denied Sept. 28, 1977.

Review Denied Oct. 18, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III and Steven D. Sheldon, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Frederic J. Dardis, Asst. Public Defender, Tucson, for appellant Mota.

Biggers & Enriquez by Bill H. Enriquez, Tucson, for appellant Garcia.

Anastacio Ned Vigil, Tucson, for appellant Bustamonte.

## OPINION

HOWARD, Chief Judge.

Appellants were all found guilty by a jury of possession of narcotics for sale and conspiracy to sell heroin. Appellants Bustamonte and Garcia were also found guilty of offering to sell heroin. The court imposed sentences of imprisonment on all appellants.

The record shows the following. Three narcotics agents of the Metropolitan Narcotics Squad, Redondo, Canez, Perella, went to Ajo, Arizona, on November 5, 1975 to discuss the possibility of purchasing a pound of heroin from one Donato Garcia. Garcia told the agents to meet him on Friday, November 7, 1975 to discuss the transaction further.

They again met Garcia on Friday at approximately 10:00 or 11:00 in Ajo. Garcia told them they would go to Lukeville, Arizona later in the evening, when Garcia would discuss the purchase of the heroin with his people. Garcia informed the agents that a person by the name of Bustamonte, nicknamed Capitone, was supposed to have sent a telegraph to Culiacan, Mexico to bring down the heroin.

After arriving at Lukeville, the agents, in the presence of the confidential informant involved in this case, Roger Valenzuela, discussed the transaction with Garcia. Garcia wanted the agents to cross the border and talk to his people about the deal. When the agents refused to accompany him, Garcia crossed the border by himself at approximately 6:00 p. m. Upon his return, at approximately 7:30 p. m. or 8:00 p. m., Garcia indicated that Bustamonte had not sent the telegram because he was nervous and said that they would have to get in touch with Bustamonte. The agents informed him that Bustamonte was at a gas station near the restaurant where they were talking.

The agents had seen Bustamonte cross the border while Garcia was gone. Garcia had given the agents a description of Bustamonte and his car, and told them Bustamonte was a "mule" (transporter of contraband) and that if they could find Bustamonte they could probably buy the heroin that day. When Bustamonte had crossed the border into Lukeville, he went into the restaurant where the agents were seated, waiting for Garcia to return from Mexico. Lukeville is situated next to the Mexican border. Bustamonte, upon entering the restaurant, spoke with some girls who had been watching the agents. Bustamonte then went across the street to a store where appellant Mota was working and spoke with him. They both looked over at the agents during their conversation. Bustamonte went over to a gas station where he continued to watch the agents.

After being informed that Bustamonte was at the gas station, Garcia went over to speak with him about selling the heroin to the agents. The confidential informant, Valenzuela, accompanied him. Bustamonte told Garcia that he was afraid the buyers were "narcs" and didn't want to sell them heroin. Bustamonte finally agreed to sell a pound of heroin to the agents, but told Garcia it would take a couple of days to arrange it.

On Monday, November 10, 1975, Garcia and Bustamonte went to Valenzuela's house and spoke with his wife, Louise. Garcia asked her if she trusted the buyers. Garcia had had several contacts with Valenzuela in the past. He had discussed selling or using heroin and, on at least one occasion, Valenzuela had seen Mota in the car when Garcia discussed the transactions with him.

After an aborted attempt to purchase the heroin on Monday, November 10, 1975, the sale finally was set for Tuesday, November 11, 1975. Garcia told the agents on Monday, that the sale would occur at his bakery and that Bustamonte and one other person would be involved.

On November 11, 1975, at approximately 10:00 a. m., the agents received a phone call that the girls were in town. This was a code signal to indicate that the heroin had arrived. The agents made arrangements to return to Ajo in the company of various other officers who would protect them and assure that nothing went wrong during the subsequent arrest.

The officers returned to Ajo where they met Donato Garcia at his bakery. When they arrived, Garcia told them the deal would take place at his house and not at his bakery. The agents then proceeded to his house and met Garcia there.

When they were let into the house, they saw Mota and Bustamonte. Garcia asked the persons in the room, Mota and Bustamonte, where the stuff was. Mota pointed to the kitchen, and said, "it's in the trash can." In the trash can was 20 ounces of heroin which appellants offered to sell to the narcotics agents for $1,300 an ounce or $26,000. Garcia asked where the money was. Bustamonte and Garcia both said that the heroin was very good stuff. Bustamonte said that at first he had been very leery of the narcotics agents because he had dealt only in marijuana up to that time. He stated, however, that they were O.K. and that he would get stuff for them later and would "mule it" to Colorado for them. Mota also stated at this time that he had been leery of them and suspected them of being "narcs", but that he apparently also felt they were O.K. and would sell to them in the future. Mota offered to sell them anywhere from 1 to 10 pounds of heroin and said that while this transaction had been on a cash basis, the next time he could arrange to have them purchase part on cash and part on account. About that time officers assisting Redondo and Canez broke into the home and arrested appellants.

 Both Mota and Bustamonte contend that there was insufficient evidence to show that they had dominion and control over a narcotic drug. As far as the conspiracy charge is concerned, Mota contends that the most the evidence shows is mere presence. We do not agree. The evidence clearly shows that all three were involved in the conspiracy to sell heroin. The rule is that one who joins a conspiracy is responsible for the substantive offenses later committed as part of the conspiracy. *United States v. Pearson*, 508 F.2d 595 (5th Cir. 1975); *United States v. Falco*, 496 F.2d 1359 (5th Cir. 1974). It makes no difference whether Garcia, Mota or Bustamonte was in

the possession of the narcotics in the trash can since the act of one was the act of all.

 Appellants were arraigned in superior court on November 20, 1975 and trial started 166 days later on May 4, 1976. Mota and Bustamonte claim that the trial court erred in denying their motion to dismiss for violation of Rule 8.2(b), Arizona Rules of Criminal Procedure. This rule provides that every person held in custody on a criminal charge shall be tried within 90 days from the date of his arraignment before the trial court. The trial in this case was held 76 days after expiration of the 90 days. However, the trial court found that there were 77 days of excludable time.

Rule 8.4, Arizona Rules of Criminal Procedure provides that the following time periods are excludable:

"a. Delays occasioned by or on behalf of the defendant . . .

\* \* \* \* \* \*

e. Delays resulting from joinder for trial with another defendant as to whom the time limits have not run when there is good cause for denying severance. In all other cases, severance should be granted to preserve the applicable time limits."

The record shows that the case was originally set for trial on February 4, 1976. At that time a continuance to February 18, 1976 was granted on motion of appellant Mota. On February 18th, Mota moved for a severance. All pending motions were continued until February 20th at which time the motion to sever was denied; however, Garcia then made a motion to disclose the informant. After oral argument on the motion, the court stated in its minute entry that it would talk to one or both of the agents regarding the confidential informant's knowledge on February 23, 1976. This apparently was done so the court could rule on whether the state should be required to disclose the name of the informant.

On February 23, 1976, Mota took a special action to this court. This caused a 58-day delay plus an additional day in order to re-schedule the case for trial. In all, the

trial court excluded 77 days. In view of the cited provisions of Rule 8.4, the trial court did not err in its determination and properly denied the motion to dismiss.

 Appellant Mota claims that his conviction of possession of a narcotic drug for sale and conspiracy to sell heroin, violates A.R.S. § 13–1641 which prohibits double punishment. We do not agree. The factual situation here is more akin to that found in *State v. Aguirre*, 27 Ariz.App. 637, 557 P.2d 569 (1976) and *State v. Celaya*, 27 Ariz.App. 564, 556 P.2d 1167 (1976). The acts necessary to convict Mota of conspiracy are not the same acts necessary to support a conviction for possession of heroin.

 Appellant Garcia was sentenced to less than the maximum allowable prison term on all counts. He recognizes that the failure to grant pretrial incarceration credit when the pretrial jail time plus the sentence is less than the maximum does not constitute a denial of equal protection. *State v. Starr*, 110 Ariz. 580, 521 P.2d 1126 (1974); *Hook v. Arizona*, 496 F.2d 1172 (9th Cir. 1974). He argues, however, that the factual situation in his case is different because multiple defendants are involved. Because one defendant was out on bond he contends it is a denial of equal protection of the laws to refuse him credit for time served since the only reason he could not post bond was his indigency. Whatever argument appellant may have on this score, the record shows that the court did give consideration to his pretrial confinement when it stated:

> "Your sentence in each of these counts will commence as of today's date. The record will show that the Court has taken into consideration the period of pretrial incarceration in this matter in imposing a sentence and in starting the sentence as of today's date."

It makes no difference whether or not there are multiple defendants. When the pre-jail time plus the sentence is less than the maximum the trial court is acting strictly within its discretion and it cannot be said that a defendant is being punished for being indigent.

Affirmed.

HATHAWAY and RICHMOND, JJ., concur.