821 P.2d 213

The STATE of Arizona, ex rel. Grant WOODS, Attorney General, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Rebecca A. Albrecht, a judge thereof, Respondent Judge.

Edwin C. COHEN, Real Party in Interest.

No. 1 CA-SA 91-048.

Court of Appeals of Arizona, Division 1, Department E.

May 28, 1991.

Review Granted as to Issues C and D and Denied as to all other issues Jan. 7, 1992.*

Grant Woods, Atty. Gen. by Billie A. Rosen, Asst. Atty. Gen., Phoenix, for petitioner.

Allen, Kimerer & LaVelle by Michael Kimerer and Michael B. Bernays, Phoenix, for real party in interest.

* Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.

## OPINION

GERBER, Judge.

By order we recently reversed the trial court's remand for further grand jury proceedings and indicated that an opinion would follow. This is that opinion.

■ The issues raised in this special action are twofold: (1) the scope of the anti-marital fact privilege in A.R.S. § 13–4062(1), and (2) whether one conspirator is liable for criminal acts committed by another conspirator acting within the scope of the same conspiracy. The statewide importance of these issues and the unavailability of equally speedy appellate relief justify special action jurisdiction.

### FACTS

Simplifying the charges for the purposes of this rendition, the defendant-real party in interest, Edwin Cohen, is charged via indictment with a series of counts which loosely can be described as conspiracy to defraud the Arizona Health Care Cost Containment System (AHCCCS). The charges rest generally on evidence that between 1982 and 1984 he and others devised a plan to skim monies from AHCCCS in part via fee billings submitted to AHCCCS.

After the grand jury indictment was issued, Cohen's counsel moved to remand the entire 42 counts to a future grand jury to reconsider. The superior court granted this motion on dual bases: it found a violation of the anti-marital fact privilege in A.R.S. § 13–4062(1), and secondly, apparently concluded that Cohen could not be liable vicariously for the criminal acts of his co-conspirators alleged in counts 18 through 29 of the present indictment. We address these two issues separately.

### I. THE ANTI–MARITAL FACT PRIVILEGE

■ One witness in the grand jury proceedings was the spouse of the defendant, Ms. Lorraine Cohen. The Cohens had been originally married in 1949. They divorced in 1976. In September 1984, they remarried. They were married at the time of her grand jury testimony in December 1988 and January 1989.

On motion, the trial court granted a defense motion to remand, because, in the court's view, Cohen's marital privilege had been violated. In order to correct this violation, the trial court limited the remand to "matters occurring between 1976 and September 1984."

The trial court's order concerning the anti-marital facts privilege is in error for two reasons. First, it is inherently inconsistent. Although the trial judge correctly found that Lorraine Cohen could properly be questioned about events that occurred during the time she and Edwin Cohen were divorced, i.e., between September 1976 and September 1984, she then ordered a remand only as to testimony about events between these dates. This portion of the order was in error because the years between September 1976 and 1984 could not have generated a violation of the marital privilege because the privilege is inapplicable to periods when the parties are unmarried. Since the Cohens were divorced during those years, defendant Cohen enjoys no anti-marital fact privilege for communications and events occurring during those years. Since the privilege does not exist for those years, it could not be violated. For this reason, the remand on this basis is unfounded.

Secondly, the marital privilege protects only those events or communications of the target defendant which are "for or against" that defendant. *See* A.R.S. § 13–4062(1). In order to fall within the marital privilege in the context of a criminal proceeding, the testifying spouse must be asked questions relating to events or communications falling within the period of marriage which at least impliedly suggest criminal conduct ["against"] by the target defendant spouse. Ms. Cohen's testimony before the grand jury does not fit this requirement. The state's questions in the grand jury proceedings are directed not at her husband but at her. Neither the questions nor the answers carry any implication of any wrongdoing on the part of defendant Cohen. The questions objected to by

the defendant are entirely related to Ms. Cohen's own business affairs within two business corporations. No questions even remotely suggest a basis for any criminal prosecution either of him, or for that matter, of her. On the basis of this record, the interrogation of Ms. Cohen before this grand jury is neither relevant nor prejudicial to the defendant's criminal liability. As such, this interrogation does not violate the defendant's marital privilege. *See State v. Hunt,* 8 Ariz.App. 514, 447 P.2d 896 (1968). Accordingly, it was error for the trial court to remand this case for further grand jury proceedings.

## II. THE "PINKERTON" DOCTRINE

▮ Count 1 of the indictment, dealing in part with the defendant Cohen, alleges his part in a conspiracy to defraud AHCCCS. Counts 18 through 29 deal with substantive conduct of his alleged co-conspirators. Neither the grand jury proceedings nor the resulting indictment reveal evidence of Cohen's direct involvement in the conduct alleged in counts 18 through 29. On a defense motion, the trial court remanded counts 18 through 29 for further grand jury proceedings, finding, apparently, that these counts could not stand against Cohen without some evidence of his direct participation in the criminal conduct alleged in those counts.

We thus are faced with the issue of vicarious criminal liability for the conduct of others. The state in this special action argues that no such evidence is needed of Cohen's direct criminal involvement in these counts because, under the "Pinkerton" doctrine, each co-conspirator is liable for the criminal acts committed by co-conspirators acting within the scope and furtherance of the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Under this theory of vicarious criminal liability, each conspirator is criminally liable for the crimes committed by other conspirators, even if the conspirator in question had no direct participation in the performance of those crimes. The grand jury was so instructed.

In response, Cohen's counsel argues that the 1978 Arizona Criminal Code Revision abolished the "Pinkerton" doctrine. Obviously, the central question becomes whether the "Pinkerton" doctrine remains viable in the present conspiracy statute, A.R.S. § 13–1003.

The answer to this question lies both in the language of A.R.S. § 13–1003 and in its legislative history. The express language of subsection (A) of the statute imposes liability when the defendant agrees "with one or more persons that at *least one of them or another person* " engage in criminal conduct. (Emphasis added.) There is similar language relating to co-conspirator conduct in subsection (B). Both such references extend liability to a conspirator who plans but has not performed the substantive criminal conduct. The statute adopts the theory that the conspirator's liability stems from his planning of crimes. The fact that these crimes were committed by others does not erase the culpability of those who conspire to plan them.

The legislative history of the statute supports this interpretation. In 1975, the Arizona Criminal Code Commission published its recommended criminal drafts along with a commentary. The pertinent portion of the commentary dealing with the proposed criminal conspiracy statute, which is nearly identical to the present statute, reads as follows:

> Subsection 602(B) [the version corresponding to present A.R.S. § 13–1003(B)] addresses the scope of the conspiratorial relationship and extends the offense to a person who knows that other persons have also conspired with his or her co-conspirator to commit the same offense. For example: D–1 conspires separately with D–2 and D–3 to commit the same offense. In so conspiring, D–2 knows that D–1 has conspired with D–3. Under section 602(B), D–2 may be held to have conspired with D–3 even though the two never made personal contact and D–2 is ignorant of the identity of D–3.

*Arizona Criminal Code Commission Report,* p. 83 (1975).

An explicit answer to the "Pinkerton" question is found in R. Gerber, *The Criminal Law of Arizona,* (1978), which addresses this issue as follows:

Subsection (B) accepts the doctrine of *Pinkerton v. United States,* 328 U.S. 640 [66 S.Ct. 1180, 90 L.Ed. 1489] (1946), that a conspirator is liable for any offense committed by another conspirator which is a reasonably foreseeable result of the conspiracy.... The Pinkerton rule represents a form of vicarious criminal liability. A person is liable for a co-conspirator's crime which was "reasonably foreseeable," or stated another way, "the person is criminally liable if he should have known, when he agreed to become part of the conspiracy, that there was a risk that the collateral offense would be committed."

The *Recommended Arizona Jury Instructions—Criminal* (1989) also support this conclusion. Instruction 10.035, entitled "Liability for Other Conspirator's Acts," reads as follows: "A conspirator is liable for all criminal acts committed by a co-conspirator during and in furtherance of the conspiracy." This instruction, which has received a qualified approval from the Arizona Supreme Court, imposes vicarious liability under the "Pinkerton" doctrine.

Accordingly, based on this statutory language and legislative history, as well as analogous cases such as *State v. Marchesano,* 162 Ariz. 308, 783 P.2d 247 (1989), the so-called "Pinkerton" doctrine remains in our present conspiracy law. Its presence makes it unnecessary to show evidence that a conspiracy defendant personally participated in the criminal conduct alleged in counts 18 through 29 of this indictment. Defendant Cohen may be liable for the conduct alleged in those counts if at trial it can be shown that he was in fact a co-conspirator with the persons performing those criminal acts and that those acts were done within the scope and furtherance of the conspiracy which Cohen helped to plan. Obviously, resolution of those questions depends on evidence at trial. It is now settled, however, that a grand jury indictment for conspiracy is not flawed by failing to allege that each conspirator per-sonally committed the planned substantive crimes. An allegation of vicarious liability as exists in the present indictment is sufficient.

## CONCLUSION

The trial court erred in remanding this case on these two bases. Accordingly, we reverse the trial court's remand order and return this case to the trial court for further proceedings based upon the existing grand jury indictment without a remand.

SHELLEY, P.J., and TAYLOR, J., concur.