844 P.2d 1147

STATE of Arizona, ex rel. Grant WOODS, Attorney General, Petitioner,

v.

Edwin C. COHEN, Real Party in Interest,

and

The Superior Court of the State of Arizona, in and for the County of Maricopa, the Honorable Rebecca A. Albrecht, judge, Respondent.

No. CV–91–0307–PR.

Supreme Court of Arizona, En Banc.

Dec. 15, 1992.

Reconsideration Denied Feb. 2, 1993.

Grant Woods, Atty. Gen. by Billie A. Rosen, Asst. Atty. Gen., Phoenix, for State of Ariz.

Bruce Feder, Phoenix, for Edwin C. Cohen, real party in interest.

## OPINION

MARTONE, Justice.

We are asked to decide whether a conspirator, who is responsible for the crime of conspiracy, can also be responsible for

the separate criminal acts of co-conspirators when the conspirator is not an accomplice or principal to those crimes. We hold that conspiratorial responsibility does not extend that far.

We are also asked to decide whether the anti-marital fact privilege of A.R.S. § 13-4062(1) is limited to testimony adverse to a criminal defendant. We hold that it is not.

Edwin C. Cohen was indicted by a grand jury for conspiracy to defraud the Arizona Health Care Cost Containment System and for various offenses committed by his co-conspirators in carrying out that conspiracy. The trial court granted Cohen's motion to remand all aspects of the indictment to the grand jury for a new determination of probable cause. The court of appeals, in a special action brought by the state, reversed and remanded the case for further proceedings based upon the existing grand jury indictment. *State ex rel. Woods v. Superior Court*, 169 Ariz. 552, 555, 821 P.2d 213, 216 (App.1991). We granted Cohen's petition for review.

## I. CO–CONSPIRATOR LIABILITY

Count 1 of the indictment charged Cohen with conspiracy. Counts 18 through 29 of the indictment charged Cohen with various substantive offenses, including theft and fraud, committed by his co-conspirators. Cohen moved to dismiss counts 18 through 29 for lack of evidence implicating him. The trial court granted the motion and remanded those counts to the grand jury for a new determination of probable cause. The reasons for the trial court's order are set forth in the margin.[1] The state argued that the trial court's ruling was based on a rejection of the ·*Pinkerton* doctrine of vicarious liability under which Cohen could be held liable for the substantive crimes of

his co-conspirators even though he did not participate in those crimes. 169 Ariz. at 553. The grand jury was in fact instructed on this doctrine and the state concedes that it presented no evidence of Cohen's direct participation in the offenses which were the subject of counts 18 through 29.

The liability of an accused for acts committed by co-conspirators is often called *"Pinkerton"* liability, after the case in which the United States Supreme Court recognized the doctrine as part of federal criminal law and upheld it against a double jeopardy challenge. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The Court held that a conspirator may be found responsible for crimes committed by a co-conspirator, as long as the acts making up the crimes are reasonably foreseeable and are carried out in furtherance of the conspiracy, even though the conspirator did not participate in their commission. *Id.* at 645–48, 66 S.Ct. at 1183–84.

### A. *Is* Pinkerton *part of our common law?*

■ The state argues that *Pinkerton* has already been adopted in Arizona. If that were the case, a healthy respect for stare decisis would end our inquiry. This court, however, has not addressed the issue. The court of appeals applied the *Pinkerton* doctrine, without comment, in *State v. Garcia*, 117 Ariz. 67, 69, 570 P.2d 1080, 1082 (App.1977), a case decided before October 1, 1978, the effective date of the current criminal code. That court also mentioned the doctrine, in dicta, in *State v. Verive*, 128 Ariz. 570, 580–81, 627 P.2d 721, 731–32 (App.1981) and, in a later case, upheld the propriety of instructing the jury

---

1. The trial court's Order of October 31, 1990, stated:

   There was no evidence presented to the Grand Jury which in any way suggests Mr. Cohen's participation in the conspiracies involving DDT, as set forth in Counts 18 through 29. *While Mr. Cohen need not have participated in the overt acts alleged, there must be some evidence to suggest that Mr. Cohen was a part of the conspiracy involving DDT.* No evidence having been presented,

   IT IS ORDERED, as to Mr. Cohen only, remanding Counts 18 through 29 for a new determination of probable cause.
   Petition for Review, Exhibit 1 at 4 (emphasis added). While the emphasized portion of the order appears to affirm the existence of the *Pinkerton* doctrine in Arizona, the remand of the substantive counts without a remand of the conspiracy count seems to indicate the opposite.

on the doctrine in the face of a claim that it constituted a comment on the evidence. *State v. Agnew,* 132 Ariz. 567, 577, 647 P.2d 1165, 1175 (App.1982).[2]

The state also points out that the doctrine appears in the *Recommended Arizona Jury Instructions—Criminal* § 10.-035 (1989). This instruction, however, relies upon *Garcia,* and thus we are right back where we started.

Before the enactment of the current criminal code, there was no comprehensive statutory treatment of vicarious criminal liability in Arizona. Chapter 1 of Title 13 of the 1956 Arizona Revised Statutes, entitled "General Provisions," did, however, contain several sections on the liability of principals. One of these sections defined "principals" to include "all persons concerned in the commission of a crime ... whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission." A.R.S. § 13–139 (1956), *repealed by* Laws 1977, Ch. 142, § 2. This was the only section which, even indirectly, dealt with vicarious liability by making aiders and abettors liable as principals, and nothing about it seemed to preclude other theories of liability. This is similar to the federal scheme, both as it is currently written, and as it existed at the time *Pinkerton* was decided. *See* 18 U.S.C. § 550 (1940) (current version at 18 U.S.C. § 2(a) (1988) (stating that anyone who "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States "is punishable as a principal")).

The current Arizona criminal code, which became effective in 1978, is loosely based on the Model Penal Code. Chapter Three of Title 13, concerning "Parties to Offenses: Accountability," defines criminal accountability. A.R.S. § 13–302 states that "[a] person may be guilty of an offense committed by such person's own conduct or *by the conduct of another for which such person is criminally accountable as provided in this chapter,* or both." (Emphasis added.) Criminal accountability for the conduct of others is then provided for in A.R.S. § 13–303, which begins "[a] person is criminally accountable for the conduct of another *if*" and then lists various circumstances in which that is the case (see quote, *infra*). (Emphasis added.) "If" in this context clearly means "if and only if." This scheme, in contrast to the provisions of the prior code and its federal analogue, exclusively defines when one may be held liable for acts committed by others and makes judicial adoption of the *Pinkerton* theory inappropriate unless it is otherwise within the statutory list.[3]

### B. *Is* Pinkerton *part of the statutory scheme?*

We turn next to the statutory scheme. The court of appeals held that the *Pinkerton* doctrine can be found in A.R.S. § 13–1003. That section, however, defines the elements and scope of the crime of conspiracy. But Cohen's indictment for the crime of conspiracy (count 1) is not at issue. We deal here with his indictment for the crimes alleged in counts 18 through 29 committed by his co-conspirators. As noted by the court of appeals, to come within § 13–1003(A), a conspirator need not agree to personally commit a criminal act but need only agree to the commission of the act by a co-conspirator. Likewise, the overt act that constitutes an element of the crime of conspiracy under § 13–1003(A) need not be personally committed by the conspirator being prosecuted. Nevertheless, the liability which stems from the planning of crimes under § 13–1003 is liability for conspiracy, not for crimes committed by co-conspirators. The fact that one can be criminally responsible for the crime of conspiracy

**2.** Just before we rendered this opinion, Division Two of the court of appeals parted company with Division One on the *Pinkerton* issue. *State v. Cordero,* (2 CA–CR92–0227) (App. Oct. 30, 1992).

**3.** It is the existence of these sections, rather than A.R.S. § 13–103 as argued by Cohen, Peti-

tion for Review at 17, which is the real stumbling block to the state's argument. The latter statute abolishes all common law offenses but, at least arguably, not all common law theories of vicarious liability.

without committing the planned substantive offenses does not mean that one is also criminally responsible for the substantive offenses without being either an accomplice or principal to those offenses.

Nor is § 13–1003(B) a basis for *Pinkerton* liability. That subsection merely provides that one who conspires with another may also be a co-conspirator of an unidentified third person with whom the other has conspired.

The state argues that *Pinkerton* liability can be found within the code's vicarious liability scheme. A.R.S. § 13–303 defines vicarious liability for crimes committed by others as follows:

A. A person is criminally accountable for the conduct of another if:

1. The person is made accountable for such conduct by the statute defining the offense; or

2. Acting with the culpable mental state sufficient for the commission of the offense, such person causes another person, whether or not such other person is capable of forming the culpable mental state, to engage in such conduct; or

3. The person is an accomplice of such other person in the commission of the offense.

Liability for the acts of one's co-conspirators is not on this list. The state, however, argues that co-conspirator liability is inherent in the concept of accomplice liability listed in subsection 3, above.

"Conspiracy" is defined in § 13–1003(A) as follows:

A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense. . . .

"Accomplice" is defined in § 13–301 to include anyone who, intending to promote or facilitate the commission of an offense:

1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense.

3. Provides the means or opportunity to another person to commit the offense.

The state argues that whenever one has conspired to commit a crime which is then actually committed by one's co-conspirators, one will inevitably come within the definition of an accomplice and can therefore be held liable for the completed crime. To put the state's case another way, if one "agrees with one or more persons that at least one of them will engage in conduct constituting" a crime, as required by the conspiracy statute, one by definition "aids, counsels, agrees to aid or attempts to aid" in the planning or commission of that crime, as required by the accomplice statute.

Although this argument has enormous appeal, we think there is a logical distinction between *agreeing to the commission of a crime by another and agreeing to aid another in committing a crime,* the latter being more participatory than the former. The distinction between being an accomplice and being a conspirator to a completed crime is certainly subtle when the crime conspired to is the one actually committed, but there is a difference. *Pinkerton,* in any event, goes well beyond this. Under *Pinkerton,* a conspirator may be held liable for a crime to which the conspirator never agreed, and which is committed by a co-conspirator with whom the conspirator never personally dealt, as long as the crime is reasonably foreseeable and is committed in furtherance of the conspiracy. Clearly, one who has not agreed to the commission of a crime and has not aided in its planning or commission could not be convicted of the crime as an accomplice. *Pinkerton* liability is not, therefore, the equivalent of accomplice liability.[4] A conspirator to a com-

---

**4.** It is for this reason that the state's reliance on *State v. Marchesano,* 162 Ariz. 308, 783 P.2d 247 (App.1989) is misplaced. *Marchesano* involved accomplice, not conspirator, liability. We thus have no occasion to decide whether *Marchesano* correctly defines the scope of accomplice liability.

pleted offense is not always an accomplice to that offense.

To sum up in a syllogism, the statute defines the universe of vicarious liability. *Pinkerton* liability is not within the statutory universe. Therefore, *Pinkerton* liability is not the law of Arizona.

Our interpretation of the statutory scheme is consistent with the views of the Arizona Criminal Code Commission, which published a draft of the new code in 1975. The Commission rejected the *Pinkerton* theory of liability, stating:

> a completed offense will not suffice for a conviction of a conspirator for the substantive offense. Before any member of a conspiracy can be held criminally liable for the offense itself it must be proven that he or she aided, counseled, agreed to aid, or attempted to aid the offense; not that he or she was merely a party to the conspiracy.

Arizona Revised Criminal Code §§ 300–304 commentary at 50–51 (1975). The relevant sections of the current code are very similar to those drafted by the Arizona Criminal Code Commission.

While we hold that *Pinkerton* is not the law in Arizona, the practical consequence of this holding should not be overestimated. It may well be an unusual conspirator who stops at the purely hypothetical agreement stage at which the conspiracy is committed, without doing something to promote the crime agreed upon and thus becoming an accomplice to it. Because of the broad reach of accomplice liability, our holding does not prevent the conviction of those who are culpable for the substantive offenses committed in furtherance of a conspiracy. It simply prevents a conspirator, who is not also an accomplice, from being held liable for a potentially limitless number of criminal acts which, though later determined to be "foreseeable," are at the time of their commission totally beyond the conspirator's knowledge and control. The

conspirator, nevertheless, remains liable for the crime of conspiracy.

The dismissed *Pinkerton* counts, 18 through 29, in fact contained accomplice allegations. Thus, even though the *Pinkerton* allegation would not support counts 18 through 29, the accomplice theory would, if there were evidence to support it. This argument was neither made in the court of appeals, nor raised before this court prior to oral argument. We therefore decline to decide whether the evidence presented to the grand jury was sufficient to support the indictment on counts 18 through 29 on an accomplice theory, or whether the trial court considered this theory in remanding.[5] Instead, we remand the case to the trial court to determine whether sufficient evidence was presented to allow the grand jury to indict Cohen on counts 18–29 based on accomplice liability, thereby making the *Pinkerton* instruction harmless error. If the trial court so finds, then the case may proceed on the existing indictment. If not, then remand of counts 18–29 is appropriate.

## II. ANTI–MARITAL FACT PRIVILEGE

One of the witnesses called by the state at the grand jury proceeding was Ms. Lorraine Cohen. Ms. Cohen was married to Cohen from 1949 until they were divorced in 1976. The Cohens were remarried in September 1984 and were married at the time of the grand jury proceedings. The trial court granted the motion to remand after finding that Cohen's "anti-marital fact privilege" had been violated when the state questioned Ms. Cohen regarding events occurring during her marriage to Cohen. Concluding that the privilege applies only to damaging testimony, the court of appeals reversed.

The anti-marital fact privilege is a creature of A.R.S. § 13–4062(1), which provides that:

> A person shall not be examined as a witness in the following cases:
> 1. A husband for or against his wife without her consent, nor a wife for or

---

**5.** We note that, while the state did briefly mention accomplice liability in its Response To Defendants' Motions To Dismiss Or, In The Alternative, Remand For Redetermination Of Proba-

ble Cause, the bulk of its argument before that court concerned *Pinkerton* liability. Petition For Review, Exhibit 15 at 88–89.

against her husband without his consent, as to events occurring during the marriage....

The court of appeals interpreted the statute to forbid testimony from a person which is "against" that person's spouse in the sense that it concerns events during marriage "which at least impliedly suggest criminal conduct." 169 Ariz. at 553, 821 P.2d at 214. Because it found that Ms. Cohen's testimony was "neither relevant nor prejudicial to [Cohen's] criminal liability" it held that her interrogation did not violate his marital privilege. *Id.* at 554, 821 P.2d at 215.

 We disagree. The statute contains no substantive testimonial limitation. The words "for or against" do not mean "favorable or unfavorable." They mean simply "on behalf of" a spouse or "on behalf of a party opposing" a spouse. This court has interpreted the privilege to forbid any testimony, not just damaging testimony, as to events which occurred during marriage unless the non-testifying spouse consents. *See State v. Williams,* 133 Ariz. 220, 231–32, 650 P.2d 1202, 1213–14 (1982) (decided under previous version of the statute which did not limit the privilege to testimony concerning events which occurred during the marriage); *State v. Whitaker,* 112 Ariz. 537, 540, 544 P.2d 219, 222 (1975). The fact that Ms. Cohen was called by the state to testify about events occurring during the marriage in a proceeding against her husband satisfies the statute. Cohen had a right to keep her from giving any testimony as to events which occurred during their marriages, not just testimony which actually damaged his interests. Because Ms. Cohen was occasionally questioned regarding events occurring before the 1976 divorce or after the 1984 marriage, or at least asked questions which were not specifically limited to the 1976–1984 period when the Cohens were not married, Cohen's anti-marital fact privilege was in fact violated.

But this is not the end of the inquiry. Remand of an indictment is appropriate only where the person under investigation is denied a "substantial procedural right." Rule 12.9, Ariz.R.Crim.P. Evidence elicited in violation of a privilege denies the accused a substantial procedural right only when actual prejudice is shown.

*See State v. Baumann,* 125 Ariz. 404, 409, 610 P.2d 38, 43 (1980); *State v. Hocker,* 113 Ariz. 450, 454–55, 556 P.2d 784, 788–89 (1976). Over and above its construction of the statute, the court of appeals found no prejudice in fact. Cohen does not argue to the contrary in his petition for review. Thus, while we disagree with the court of appeals' construction of the statute, we affirm its reversal of the remand order as it relates to the anti-marital fact privilege issue.

## DISPOSITION

The opinion of the court of appeals is vacated and the case is remanded to the trial court for further proceedings consistent with this opinion.

MOELLER, V.C.J., CORCORAN and ZLAKET, JJ., and LLOYD FERNANDEZ, Judge, Court of Appeals, concur.

FELDMAN, C.J., did not participate in the determination of this matter; pursuant to Ariz. Const. art. 6, § 3, LLOYD FERNANDEZ, J., of the Arizona Court of Appeals, Division Two, was designated to sit in his stead.