130 P.3d 1154

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Amalia NEVAREZ, Defendant–Appellant.**

No. 30486.

Court of Appeals of Idaho.

Nov. 2, 2005.

Review Denied March 22, 2006.

Nevin, Benjamin McKay, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

GUTIERREZ, Judge.

Amalia Nevarez appeals from the judgment of conviction entered upon the jury's verdict finding her guilty of trafficking in, and conspiring to traffic in, cocaine. Nevarez asserts that the district court abused its discretion in denying her motion for a new trial and in failing to properly instruct the jury regarding co-conspirator liability. We affirm in part and reverse in part.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

In 2002, Nevarez was charged by a seven-count information. Count I alleged that Nevarez conspired with her husband, Eusebio Nevarez, and her son, Michael Nevarez, to traffic in cocaine. Counts II and III charged that Nevarez trafficked in cocaine by actually or constructively possessing and aiding in the delivery of at least twenty-eight grams of cocaine. Nevarez was found guilty on the first three counts and acquitted of the remaining counts involving trafficking in methamphetamine.

Both Eusebio and Michael testified at trial. Michael had previously pled guilty to two counts of conspiracy to deliver cocaine from charges arising out of this same investigation. Michael testified that he lived in his parents' home and that he was involved in drug sales with his father. Michael also testified that his mother did not use drugs, did not permit drugs in the home, and was opposed to illegal drugs.

Eusebio also had pled guilty to two counts of conspiring to deliver methamphetamine, but subsequently filed a motion to withdraw his guilty plea, which the district court denied. Eusebio appealed and his appeal was pending at the time of Nevarez's trial.[1]

During Eusebio's testimony at Nevarez's trial, the district court advised Eusebio that his testimony might incriminate him in the future and advised him of his right against self-incrimination. The district court specifically addressed Eusebio's appeal and advised Eusebio that if his appeal was successful, his testimony at Nevarez's trial could be used against him at his retrial. Eusebio was informed that he had the right to refuse to answer any question that would implicate him in a crime. Eusebio stated that he understood these rights and proceeded to testify. The questioning turned to how Eusebio became involved in drug trafficking. Eusebio answered the questions as to his own involvement but did not mention Nevarez except to note that she was not present the first time he was approached regarding the storage of drugs. Eusebio did not state whether Nevarez was involved in the transactions. At this point, the district court advised Eusebio that he had the right to be represented by an attorney, noting that "if you continue to answer questions concerning any knowledge you may have with drugs and your involvement with drugs, those statements would likely convict you of the offense of which you've been charged." The district court then called a recess to allow Eusebio to contact his lawyer.

After the recess, Eusebio informed the district court that his attorney advised him to not answer any further questions. Eusebio then asserted his Fifth Amendment privilege against self-incrimination and after brief questioning by defense counsel, the district court excused Eusebio from testifying further. The state requested that the district court strike the testimony given by Eusebio prior to his assertion of his Fifth Amendment right on the basis that the state would not have an opportunity to cross-examine Eusebio on this testimony. The district court granted the state's motion to strike Eusebio's testimony.

The jury returned a verdict finding Nevarez guilty of counts I, II and III. Nevarez subsequently filed a motion for a new trial stating several grounds, including that the district court talked Eusebio out of testifying after Eusebio had informed the court that he understood his Fifth Amendment rights. The district court denied Nevarez's motion for a new trial, entered judgment against Nevarez, and imposed concurrent sentences of fifteen years with three years determinate on each count. Nevarez appeals, contending that the district court abused its discretion by denying her motion for a new trial and that the district court erred in instructing the jury regarding co-conspirator liability.

## II.

## ANALYSIS

### A. Co–Conspirator Liability Jury Instructions

At trial, the state submitted proposed jury instructions based upon a theory of co-conspirator liability, to which Nevarez objected. On appeal, Nevarez asserts that the district court erroneously instructed the jury as to the bases on which it could find her guilty of trafficking in cocaine, as charged in counts II and III of the information. Specifically, Nevarez contends that Jury Instructions 16, 20 and 21 permitted the jury to find Nevarez guilty on counts II and III without finding that she either committed the criminal act or aided or abetted in its commission. Nevarez

1. This Court affirmed the order of the district court denying Eusebio's motion to withdraw his guilty plea in an unpublished opinion, *State v.* *Nevarez*, Docket No. 29961, 142 Idaho 96, 123 P.3d 729, 2004 WL 3590984 (Ct. App. Nov. 26, 2004).

argues that Idaho does not recognize such a broad theory of co-conspirator liability.

The state responds that Idaho recognizes liability for criminal acts committed by a co-conspirator when the acts are themselves the object of the conspiracy. The state also asserts that even if Nevarez's contention that only principals are subject to criminal liability, Jury Instruction 19 instructed the jury that to find Nevarez guilty, her participation as a principal in the crime must have been proven beyond a reasonable doubt. Therefore, the state argues that the jury instructions as a whole did not lead the jury to find Nevarez guilty as a principal in the crime of trafficking in cocaine without finding that she participated in the crime in some way.

 Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993). If contradictory jury instructions are given on a material issue, the error is prejudicial, for an error in one instruction cannot be cured by reference to a correct statement of the law in another. *State v. Paciorek*, 137 Idaho 629, 634, 51 P.3d 443, 448 (Ct.App.2002).

The question presented here is whether Idaho law allows conviction for a completed crime based on the co-conspirator theory of liability adopted by the United States Supreme Court in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). *Pinkerton* involved two brothers who were convicted of conspiracy to unlawfully remove, deposit and conceal certain commodities subject to taxation with the intent to defraud the United States of such tax. In addition to the conspiracy charge, the indictment also contained ten counts for the substantive crimes. Walter G. Pinkerton was convicted of nine substantive counts and W. Daniel Pinkerton was convicted of six substantive counts. Each of the substantive offenses was found to have been committed pursuant to the conspiracy. There was, however, no evidence to show that Daniel partici-

pated directly in the commission of the substantive offenses of which he was convicted. The United States Supreme Court held that so long as the partnership in crime continues, the partners act for each other in carrying it forward and the overt act of one partner in furtherance of the conspiracy may be the act of all without any new agreement specifically directed to that act. *Pinkerton*, 328 U.S. 646–47, 66 S.Ct. 1183-84, 90 L.Ed. 1496. The Supreme Court explained its reasoning as follows:

. . . .

> The criminal intent to do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all. An overt act is an essential ingredient of the crime of conspiracy under [the United States Criminal Code]. If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offenses.

> A different case would arise if the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.

*Id.* at 647–48, 66 S.Ct. at 1184, 90 L.Ed. at 1496-97.

Nevarez notes that the *Pinkerton* case has not received widespread acceptance in the United States and many states have rejected *Pinkerton* liability as state policy. For example, the Washington State Supreme Court has determined that the *Pinkerton* theory of

**620**

liability does not comport with the Washington State law on complicity because the Washington statute has been interpreted to require a showing that the defendant have knowledge that co-conspirators intended to commit the specific crime charged, as opposed to any foreseeable crime committed as a result of the conspiracy. *State v. Stein,* 144 Wash.2d 236, 241–42, 27 P.3d 184, 188–89 (Wash.2001). The Arizona Supreme Court has also rejected *Pinkerton* liability based upon the language of the Arizona conspiracy statute. *See State ex. Rel. Woods v. Cohen,* 173 Ariz. 497, 501, 844 P.2d 1147, 1151 (1992). The Arizona Supreme Court reasoned:

. . . .

It may well be an unusual conspirator who stops at the purely hypothetical agreement stage at which the conspiracy is committed, without doing something to promote the crime agreed upon and thus becoming an accomplice to it. Because of the broad reach of accomplice liability, our holding does not prevent the conviction of those who are culpable for the substantive offenses committed in furtherance of a conspiracy. It simply prevents a conspirator, who is not also an accomplice, from being held liable for a potentially limitless number of criminal acts which, though later determined to be "foreseeable," are at the time of their commission totally beyond the conspirator's knowledge and control. The conspirator, nevertheless, remains liable for the crime of conspiracy.

*Cohen,* 173 Ariz. at 501, 844 P.2d at 1151.

It has been observed that holding a co-conspirator liable for a potentially infinite number of crimes of which he did not have knowledge, or to which he may have objected or been unable to control, imposes liability on a co-conspirator for which he lacks the requisite *mens rea* that is generally required for criminal liability. *See* WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW, § 13.3(a) (2d ed.2005). Theoretically, under such unlimited liability, a criminal defendant co-conspirator may be held liable for a specific intent crime of a co-conspirator, such as murder, that the defendant had not encouraged or even contemplated but to which he may even have objected. In such a situation, the state

would have to prove beyond a reasonable doubt only that one co-conspirator had the requisite state of mind to commit the substantive crime and that the defendant co-conspirator simply agreed to a separate criminal objective, regardless of the defendant co-conspirator's actual intent. It is possible under the *Pinkerton* theory of liability that one might, by virtue of his involvement in a conspiracy, be held liable for thousands of additional offenses of which he was unaware and which he did not influence. *Id.* For example,

. . . .

If the *Pinkerton* rule were adhered to, each prostitute or runner in a large commercialized vice ring could be held liable for an untold number of acts of prostitution by persons unknown to them and not directly aided by them. Each retailer in an extensive narcotics ring could be held accountable as an accomplice to every sale of narcotics made by every other retailer in that vast conspiracy. Such liability might be justified for those who are at the top directing and controlling the entire operation, but it is clearly inappropriate to visit the same results upon the lesser participants in the conspiracy.

*Id.*

■ We need not decide whether application of the *Pinkerton* theory would be advisable as a matter of public policy because we find it to be inconsistent with Idaho statutes. It is the province of the Idaho legislature, not the courts, to define the elements of a crime. *State v. McGlochlin,* 85 Idaho 459, 467, 381 P.2d 435, 439 (1963); *State v. Hardesty,* 136 Idaho 707, 711, 39 P.3d 647, 651 (Ct.App. 2002); *State v. Lesley,* 133 Idaho 23, 26, 981 P.2d 748, 751 (Ct.App.1999). Therefore, Idaho courts are not free to add or subtract elements at will.

The *Pinkerton* theory allows any participant in a criminal conspiracy to be convicted for a completed crime committed by any person in furtherance of the conspiracy, but Idaho statutes do not provide for that type of criminal liability. The two statutes in question are the criminal conspiracy statute, Idaho Code § 18–1701, and the statute defining who may be held responsible as a principal in

a completed crime, I.C. § 18–204. Section 18–1701 defines only the crime of criminal conspiracy and provides a penalty for that crime of conspiring.[2] It says nothing at all about who may be deemed guilty of the crime to which the conspiracy is directed if that crime is in fact completed. Section 18–204 is the statute that identifies who may be convicted for a completed crime committed by a third party. It states:

All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, or who, by fraud, contrivance, or force, occasion the intoxication of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command or coercion, compel another to commit any crime, are principals in any crime so committed.

This statute provides that an individual may be convicted of a crime committed by another only if the individual aided, abetted, advised, or encouraged its commission, or caused the other to commit the crime by way of fraud, contrivance, force, intoxication, threats, coercion, or the like. Section 18–204 is very clear in requiring this type of specific conduct in aiding, encouraging or causing the third party to commit the offense. Application of the *Pinkerton* theory would override the limits on criminal liability that are established by this carefully crafted legislative enactment. Therefore, considerations of whether the *Pinkerton* theory of liability amounts to good public policy are beside the point; the *Pinkerton* theory has not been embraced by the Idaho legislature and therefore is not part of the criminal law of this state.

By declining to adopt *Pinkerton* liability, we are not allowing criminal co-conspirators to escape liability for crimes that they encouraged or advised or to which they were otherwise an accomplice. Those who are culpable for a criminal offense under Idaho law may still be held accountable for their actions pursuant to I.C. § 18–204 as a principal to such offense.

In applying this view to the jury instructions in this case, we conclude that the instructions allowed the jury to convict Nevarez on the theory of *Pinkerton* liability, inconsistent with Idaho law. The district court gave the following vicarious liability instructions:

### Jury Instruction 16

Each member of a criminal conspiracy is personally responsible for *all criminal acts* committed in accomplishing or attempting to accomplish the purpose of the conspiracy, even though the criminal act or acts may have been committed by another member of the same conspiracy. In other words, *the criminal act or acts of one conspirator is the criminal act of all conspirators in the same conspiracy.*

(Emphasis added).

Jury Instructions 20 and 21, which address the substantive crimes, are substantially identical and state in pertinent part:

In order for the defendant to be guilty of Trafficking in Cocaine ... the state must prove each of the following:

1. On or about [the date for the one of seven counts in the information]

2. in the state of Idaho

3. the defendant, Amalia Nevarez,

 *or*,

 a co-conspirator, *during the course and in furtherance of a conspiracy* to traffic in Cocaine;

4. *delivered or possessed, or did aid and abet another to deliver or possess*

5. twenty-eight (28) grams or more of Cocaine; and

---

**2.** Idaho Code Section 18–1701 defines criminal conspiracy as follows:

 If two (2) or more persons combine or conspire to commit any crime or offense prescribed by the laws of the state of Idaho, and one (1) or more of such persons does any act

to effect the object of the combination or conspiracy, each shall be punishable upon conviction in the same manner and to the same extent as is provided under the laws of the state of Idaho for the punishment of the crime or offenses that each combined to commit.

6. the defendant or co-conspirator knew that it was cocaine.

(Emphasis added).

Jury Instructions 20 and 21 allowed the jury to find Nevarez guilty of trafficking in cocaine if they found that Nevarez *or a co-conspirator* delivered or possessed, *or aided or abetted another* to deliver or possess, cocaine. In other words, Jury Instructions 20 and 21 allowed the jury to find Nevarez guilty of trafficking in cocaine where a co-conspirator aided or abetted another person, who was potentially unknown to Nevarez, to deliver or possess cocaine. Collectively, Jury Instructions 16, 20 and 21 provide for unlimited co-conspirator liability where there is a loose connection between defendant and some other person, liability that would not otherwise exist but for defendant's partnership in the conspiracy. Under these instructions, the state was not required to prove that Nevarez encouraged a co-conspirator or had knowledge of a co-conspirator's actions of aiding and abetting some unknown person to deliver or possess cocaine, or even benefited personally from such actions of a co-conspirator. These instructions do not require any intent on the part of Nevarez but instruct the jury that Nevarez may be found guilty simply by the nature of her association with a co-conspirator.

The state argues that the jury instructions as a whole required the jury to find Nevarez guilty only if they found her participation in the substantive crimes had been proven beyond a reasonable doubt, and are therefore not misleading. The district court further instructed the jury:

### Jury Instruction 19

All persons who participate in a crime either before or during its commission, by intentionally aiding or abetting another to commit the crime with the intent to promote or assist in its commission, are considered principals in the commission of the crime.

The law makes no distinction between a person who directly participates in the acts constituting a crime and a person who, either before or during its commission intentionally aids, assists, facilitates, promotes, encourages, counsels, solicits, invites, helps or hires another to commit a crime with the intent to promote or assist in its commission. Both can be found guilty of the crime. Mere presence at, acquiescence in, or silent consent to, the planning or commission of a crime is not sufficient to make one an accomplice.

The participation of the defendant in the crime must be proved beyond a reasonable doubt.

While Jury Instruction 19 requires that the participation of the defendant in the crime must be proved beyond a reasonable doubt, Jury Instructions 16, 20 and 21 were contradictory on a material issue and cannot, therefore, be cured by Jury Instruction 19. As we explained in *State v. Andrus*, "[w]e have considerable faith in juries, but we cannot expect them to discern the correct implications necessary to reconcile contradictory instructions given by the court, all of which are expected to be given equal weight." *Andrus*, 118 Idaho 711, 716, 800 P.2d 107, 112 (Ct. App.1990).

As the jury instructions incorrectly enabled the jury to find Nevarez guilty of trafficking in cocaine on the basis of the *Pinkerton* theory of liability, we reverse as to Counts II and III.

### B. Motion for a New Trial

■■■ We address Nevarez's argument that the district court erred in denying her motion for a new trial as it relates to the remaining Count I. The grounds upon which a new trial may be granted are set out in I.C. § 19–2406. The decision whether to grant a new trial rests in the sound discretion of the district court. *State v. Lankford*, 116 Idaho 860, 873, 781 P.2d 197, 210 (1989). Therefore, we will not reverse the district court's decision on such a motion absent a showing of an abuse of discretion. *State v. Priest*, 128 Idaho 6, 15, 909 P.2d 624, 633 (Ct.App.1995). When the district court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the

boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Nevarez argues that a new trial should have been granted because the district court simply excused Eusebio as a witness as soon as he invoked the Fifth Amendment privilege instead of allowing continuing questioning of Eusebio and ruling on Eusebio's assertion of his privilege as to each question posed. Nevarez also claims the district court erred in striking Eusebio's testimony given before he invoked his Fifth Amendment privilege.

■ The state responds that Nevarez failed to raise these issues at trial or in her motion for a new trial and has therefore waived the right to assert them on appeal. This Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Rozajewski,* 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct.App.1997). Indeed, where the complaining party fails to object to a district court's ruling at trial when given several opportunities to do so, the issue is foreclosed from assigning error to such ruling on appeal. *State v. Adair,* 99 Idaho 703, 709, 587 P.2d 1238, 1244 (1978).

■ We agree that with respect to Eusebio's continued direct examination, this issue was not preserved for appeal. The record indicates that after Eusebio invoked his Fifth Amendment privilege, the district court gave defense counsel the opportunity to further examine Eusebio and to inquire into whether his fear of prosecution was reasonable as to all potential questions that could be asked on direct examination. When given the opportunity to further examine Eusebio, defense counsel simply asked Eusebio whether it was his decision to take his attorney's advice and to assert his Fifth Amendment privilege. Defense counsel stated that he had no further questions upon receiving an affirmative answer from Eusebio. Trial counsel had every opportunity to pursue questions on direct examination after Eusebio asserted his Fifth Amendment right not to testify further. Without any further attempt at direct examination, the district court could not rule on the

further application of the Fifth Amendment. Therefore, this issue is considered waived and we will not address it further.

■ Nevarez also failed to preserve the issue of whether the district court erred in striking testimony given by Eusebio before he invoked his Fifth Amendment privilege. At trial, the state requested that the district court strike Eusebio's testimony, arguing that the state would not have the opportunity to cross-examine Eusebio to the extent of his testimony on direct examination. Nevarez did not respond to the state's motion to strike, and the court granted the motion. Nevarez neither objected at trial nor cited error in granting the motion to strike as one of the grounds for her motion for a new trial.

■ This Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Rozajewski,* 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct. App.1997). However, we may consider fundamental error in a criminal case, even though no objection was made at trial. *Id.* Fundamental error has been defined as error which goes to the foundation or basis of a defendant's rights, goes to the foundation of the case or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be waived. *State v. Babb,* 125 Idaho 934, 940, 877 P.2d 905, 911 (1994).

Nevarez argues that this issue should be addressed on appeal because it amounts to fundamental error as she was denied her due process right to present evidence. Nevarez cites numerous cases for this proposition but none of these cited cases supports the proposition that fundamental error occurred in this case. *See State v. Porter,* 130 Idaho 772, 785–86, 948 P.2d 127, 140–41 (1997) (determining no fundamental error where prosecutor fails to disclose report in timely manner and does not prejudice defendant, or where prosecutor makes improper comments that are not intended to inflame the minds of jurors or to arouse passion or prejudice against defendant); *State v. Knowlton,* 123 Idaho 916, 918–20, 854 P.2d 259, 261–63 (1993) (stating no fundamental error where judge fails to recuse himself from probation

**624**

hearing, despite involvement in organization or committee with tangential relation to case); *State v. Bingham,* 116 Idaho 415, 423, 776 P.2d 424, 432 (1989) (determining that admission of expert testimony is not fundamental error, even where admission is abuse of discretion); *State v. Haggard,* 94 Idaho 249, 251–52, 486 P.2d 260, 262–63 (1971) (ruling that prosecutor's comment in presence of jury regarding defendant's failure to identify alibi at preliminary hearing is fundamental error). Having reviewed the record, we find that this situation does not rise to the level of fundamental error. Thus, we decline to address the issue of whether the district court erred in striking Eusebio's testimony on appeal.

We conclude that the district court did not err in denying Nevarez's motion for a new trial and consequently affirm as to Count I.

## IV.

### CONCLUSION

For the reasons stated above, we reverse Nevarez's judgment of conviction involving the two counts of trafficking in cocaine. Nevarez's conviction for conspiracy to traffic in cocaine is affirmed.

Chief Judge PERRY and Judge LANSING concur.

